## BUSH *v.* ROBERTS.

[110 Pac. 790.]

MORTGAGES—CONSIDERATION.

1. Where a debtor in default for interest, and on other accounts gave to his creditor a note and a mortgage partly as additional security and partly as representing an additional advance of money, the mortgage was supported by a valuable consideration.

MORTGAGES—OWNERSHIP OF MORTGAGED PREMISES—REPRESENTATIONS.

2. A creditor may rely on the written statement of a third person that he is a tenant of the debtor who is the owner, and take a mortgage from the debtor on the premises in the possession of the third person.

ESTOPPEL—REPRESENTATIONS AS TO TITLE.

3. One who had deeds taken in the name of a third person to delay his creditors may not call on equity to interfere to protect him from a mortgage executed by the third person to his creditor, relying on the written statement of the former that the third person was the owner.

From Polk: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit to foreclose certain mortgages given to secure two promissory notes executed by A. G. and M. L. Roberts in favor of Ladd & Bush. The first note is for the sum of $1,000, and with interest at 8 per cent, dated March 21, 1905, and due 10 months after date. The second note is for $2,000, with a like rate of interest, and is dated December 4, 1908, due one day after date. Both notes are secured by mortgages upon the lands hereinafter referred to. The evidence tends to show that in the month of November, 1902, defendant Williamson, who is a son-in-law of defendant Roberts, entered into a contract with J. P. Emmett for the purchase of about 13½ acres of land for the sum of $540, paying $132 shortly after the contract was executed, and agreeing to pay the balance in equal installments. He immediately went upon the tract, and erected a house and made other valuable improvements; that in 1904, he was in default in his payments to Emmett and applied to Roberts for assistance. Roberts agreed to pay the balance due Emmett, and, as the place was small, he purchased 13 acres of land adjoining the first tract, taking the deeds from Emmett to both tracts in his own name, but agreed to convey them to defendant Williamson on repayment of the purchase money advanced by him. Williamson testified that the conveyances were so arranged as security to Roberts, and also to prevent certain creditors of his from embarrassing him

by actions. The proceeds of the first $1,000 note were used largely to pay Emmett for the land, and advances were made by Roberts from time to time to pay for picking and caring for the hops raised by Williamson on the place. The proceeds of the hops produced on the place were retained by Roberts, but the evidence as to their amount and value is very meager, and it seems probable that they did not exceed the taxes paid by Roberts and the interest and advances made by him for the picking. In 1905 Williamson executed to plaintiffs a chattel mortgage for $700 to be used in the cultivation of the hops then being raised on the land in question and in said mortgage represented that he was a tenant of Roberts on the land, and that Roberts was the owner. The evidence tends to show that plaintiff believed that relation still existed when the last mortgage was executed and had no notice that Williamson claimed any other interest. The court below found in favor of plaintiff as to the first mortgage of $1,000, but held that the second was without consideration and found for the defendant. From this decree plaintiff appeals.                                    MODIFIED.

For appellants there was a brief with oral arguments by *Mr. Oscar Hayter, Mr. George G. Bingham* and *Mr. Charles L. McNary.*

For respondents there was a brief and an oral argument by *Mr. Nehemiah L. Butler.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The second mortgage was clearly given for a valuable consideration. The evidence of Roberts is to the effect that he was owing Ladd & Bush a large sum of money secured by mortgages; that he was in default for interest and on other accounts, and, when he applied for aid, they suggested that he give them a note for $2,000, and the second mortgage, partly as additional security

and partly as representing an additional advance of $300 or $400. Roberts' testimony also indicates that a portion of these prior loans had been used to assist Williamson in making improvements, paying for hired help, and for the hop picking. Under the circumstances, we see no reason for holding the last note and mortgage void.

2. The plaintiffs had a right to rely on the written statement of Williamson that Roberts was the owner of the land, and, if the subsequent transactions have been to his prejudice, he cannot be heard to complain. He had not demanded any marshaling of securities with respect to that part of the debt covered by other mortgages, and in the present state of the pleadings and evidence it is impossible for this court to afford him any relief by directing that other security be exhausted before recourse is had upon the land in controversy. Besides this, the testimony seems clear that Williamson had the deeds from Emmett made to Roberts with a view of delaying the claims of other creditors.

3. Under these circumstances, a court of equity will not interfere to protect him from the consequences of his fraudulent acts. The decree of the circuit court will therefore be modified and a decree entered foreclosing both mortgages, with an allowance of $50 upon the first and $100 upon the second as attorney's fees, reserving, however, to defendant Williamson the statutory right of redemption.                   MODIFIED: DECREE RENDERED.