Submitted on briefs January 3, reversed in part and affirmed in part February 14, rehearing denied March 6, 1928.

## A. S. SKYLES ET AL. *v.* V. G. KINCAID ET AL.

### (264 Pac. 432.)

**Pleading—Demurrer Admitted Truthfulness of Recitals in Nunc Pro Tunc Order Pleaded in Reply.**

1. Demurrer admitted truthfulness of recitals in *nunc pro tunc* order pleaded in reply relating to agreement entered into in open court.

**Executors and Administrators — Statute Held not to Authorize County Court to Vest Property of Intestate in His Widow in Satisfaction of Her Claims Against Estate to Settle Controversy With Other Heirs (Or. L., § 936).**

2. Section 936, Or. L., giving County Court jurisdiction to direct payment of debts and legacies, distribute estate of intestates, and dispose of property of deceased persons, and to direct the admeasurement of dower, does not authorize probate court to vest property of an intestate in fee simple in his widow in satisfaction of her claims against his estate in order to settle a controversy with the other heirs.

**Courts—Probate Court's Attempt to Take Property from Heirs and Vest It in Widow Held Ineffective as Consent Decree, Where Court Lacked Jurisdiction of Subject Matter (Or. L., § 936).**

3. Where, in settlement of an estate between the widow and the intestate's children, the probate court entered an order taking title out of the children, some of whom were minors, and giving it to widow, *held* that, although guardians of such minors had consented to such order, it could not be upheld as a consent decree, under Section 936, Or. L., where court lacked jurisdiction of the subject matter itself.

**Life Estates—Ordinarily, Life Tenant must Pay Taxes.**

4. Ordinarily, it is the duty of the life tenant to pay taxes.

**Estoppel—Minor Heirs Held not Estopped to Deny Validity of Probate Order Vesting Intestate's Property in Widow by Their Acts After Attaining Which were not Fraudulent.**

5. Where probate court, without jurisdiction, vested property of intestate in his widow in settlement of her claims against his estate, minor heirs *held* not estopped to deny validity of probate court's order, where only events occurring after they reached majority were sale of one-half interest in the property by transferor

---

1. See 21 R. C. L. 506.

4. Liability of life tenant for taxes, see notes in 114 Am. St. Rep. 448; 137 Am. St. Rep. 659; 17 A. L. R. 1384; 32 L. R. A. 744. See, also, 17 R. C. L. 636.

5. Estoppel *in pais* as applied to infants, see note in 44 Am. Dec. 285. See, also, 10 R. C. L. 754.

to plaintiff, the purchase by plaintiffs of an adjoining half lot, and the payment of taxes and assessments, where they performed no act which could be designated as fraudulent or committed with an intent to influence the plaintiffs; it being immaterial that heirs allowed probate court's orders to remain on file after attaining majority, since they could not have expunged them if they had desired.

Estoppel — One may Lose Right to Assert Land Title by Allowing Another to Hold Himself Out as Owner, Thereby Misleading Purchaser.

6.   One may lose the right to assert his title to land by allowing another to hold himself out as the owner, and thereby mislead an innocent third party into dealing with the latter, and paying him the purchase price of the property under the honest belief that the buyer is dealing with the owner.

Estoppel—Adult Heir, if Aware of Order Improperly Transferring Intestate's Property to Widow and of Sale and Transferees' Good-faith Expenditure of Money Thereon, Would be Estopped to Deny Invalidity of Order.

7.   Where probate court, without jurisdiction, vested intestate's property in his widow in settlement of her claims against his estate, and plaintiffs, as her transferees, expended money on the property, believing they had title and paid taxes and assessments thereon, heir who was of age of majority, and who actively participated, not only in her individual capacity, but in her representative capacity as guardian *ad litem* for minor heir, if aware of probate court order and widow's dealing with property, and that plaintiffs honestly expended their money thereon, would be estopped to deny invalidity of probate court order.

Quieting Title—Defendant in Suit to Quiet Title, Could not Rely on Failure to File Order Vesting Property in Decedent's Widow, Where She Knew of Contents (Or. L., § 10062).

8.   In suit to quiet title by one claiming title through decedent's widow, defendant could not rely as a defense on failure of clerk to file order vesting property of decedent in widow in settlement of controversy with heirs, as required by Section 10062, Or. L., where she was fully aware of contents of such order.

Courts, 15 **C. J.**, p. 804, n. 7, p. 1017, n. 7.
Estates, 21 **C. J.**, p. 955, n. 69.
Estoppel, 21 **C. J.**, p. 1172, n. 77, p. 1173, n. 78, 81, 82.
Infants, 31 **C. J.**, p. 1005, n. 20, 23.

From Clatsop: J. A. Eakin, Judge.

In Banc.

This is a suit to quiet title.   The complaint alleges that the plaintiffs are the owners of a certain lot in

6.   Estoppel of land owner by allowing record title to remain in another, see note in 22 **L. R. A.** 256. See, also, 10 **R. C. L.** 780.

the City of Astoria, that although the defendants have
no estate or interest in the lot they unlawfully assert
some title to it; the prayer asks that the plaintiffs'
title be quieted and that the defendants be forever
enjoined from asserting any title. We shall briefly
state that part only of the answer with which we are
concerned. In this portion the defendants Marguerite
Kincaid, Joseph Schamberger and Marie Harris
allege, that January 26, 1917, Joseph Schamberger,
their father, died intestate and, that at the time of his
death he owned the foregoing lot together with other
properties; that surviving the deceased were his
widow, Elizabeth, and the aforementioned three chil-
dren; that upon the death of the deceased these three
defendants became seised in fee of an undivided one
third of the whole real estate, including this lot,
subject only to the dower, or use of the one-half
part thereof, by the widow during her lifetime. Con-
tinuing the answer alleges that thereafter the widow
and one John Waterhouse were appointed adminis-
tratrix and administrator respectively of the estate
and acted as such until September 8, 1918, when the
widow resigned; that June 10, 1918, the latter had
filed a petition in the County Court praying for an
admeasurement and assignment of dower in the
estate; that all the heirs, including these defendants,
were served, appeared and answered; that September
9, 1918, the County Court entered its decree allowing
the petition and issued a warrant to three commis-
sioners authorizing them to set off the dower estate;
that on the same day the commissioners filed their
report, and the following day the court entered its
decree in accordance with the report which assigned
to the widow a life estate in this lot, together with a
similar estate in two other properties, one in Seaside

and the other in Ocean Grove. The answer further alleges that December 1, 1919, the widow Elizabeth, by deed conveyed to the plaintiff A. S. Skyles and one Rowan, her life estate in this lot and that February 28, 1922, Rowan conveyed his one-half interest to the plaintiff T. G. Skyles. It concludes, that the only estate which the plaintiffs possess is an estate during the life of Elizabeth. Defendants allege that they own the vested remainder and pray for a decree so declaring.

We come now to that portion of the reply with which we are particularly concerned; it denied that the only estate of the plaintiffs was a life estate and alleges that the plaintiffs own the fee. In all other particulars the reply admits the allegations of the answer, and contains the following additional matter. That the deceased's estate was appraised at $100,458.66, and that by statute the fee of the administratrix, that is, the widow, would have amounted to $1,064.58. That at the time of deceased's death, this lot was improved with a one-story wooden frame building, the roof and foundation of which were in a dilapidated condition and needed repairs; that the property rented for about $80 or $100 per month; that it was appraised by the estate's appraisers as worth $12,500, but that there were unpaid city assessments of $4,441.16, which constituted a lien against this property; that the 1917 taxes amounted to $195.59 and were unpaid; that the Seaside property was encumbered with unpaid taxes to the amount of $54 and that the Ocean Grove property was encumbered with unpaid taxes to the amount of $23.20. Continuing, the reply alleges that when the widow filed her petition for admeasurement of dower, Joseph, the son, and Marie, the daughter, both of whom are

defendants in this suit, were minors; that Marguerite, a daughter, the third defendant, was appointed guardian *ad litem* for Joseph and one A. A. Anderson was appointed guardian *ad litem* for Marie; that the answer filed to the widow's petition did not dispute her right to dower; that thereupon the widow and the three children, two of whom acted through their guardians *ad litem* and attorneys, came to an understanding and settled their respective rights to and interests in the various pieces of property by agreeing to have awarded to Elizabeth by the court in fee, this lot together with the Seaside property and the Ocean Grove property on the following conditions: first, that Elizabeth should forthwith resign her office as administratrix, second, that she should waive her fee as administratrix, and third, that she should assume and pay all taxes and liens levied against these three properties.  The reply alleges that she thereupon resigned her office, waived her fees and assumed and agreed to pay the assessments and taxes; that when the three commissioners acted, it was understood that they were to assign to her these three properties in fee simple; that within a few minutes of their appointment and without viewing or appraising any of the properties, they made their report in compliance with the foregoing agreement.  The reply admits the report of the commissioners and the order of the court as set forth in the answer, but alleges that due to inadvertence and failure to use appropriate language, the intention to award her the fee was not clearly expressed; that September 18, 1918, another order was entered which is set forth in the reply; a brief digest of the latter order we shall state as follows: that the widow's petition for assignment of dower was heard September 9th; that she

appeared in person and by attorneys; that the three
children before mentioned, the only heirs, appeared in
person and by attorneys; that two of them, who were
minors, appeared also by their guardians *ad litem.*
That it appeared to the court that the parties desired
to amicably adjust their controversies regarding the
estate and so expressed themselves in open court, and
that thereupon a written agreement was entered into
between the widow on the one part and the three
heirs on the other; that by virtue of this agreement
the widow should take the property which we have
already mentioned, in fee simple and in full satis-
faction of all her rights and claims in, to and against
the estate; that she should resign as administratrix,
waive all claims for administratrix's fees and assume
the assessments and charges against the foregoing
property. The order then recites:

"It is therefore and hereby ordered and adjudged
and decreed that all disputes and controversies be-
tween the said parties are hereby settled, adjusted,
and compromised and that there is hereby given and
awarded to Elizabeth Schamberger in fee simple all
of the following described real property," describing
the lot involved in this suit.

Other recitals contained in the order specifically
state that the foregoing property is given to the
widow in fee simple. The reply next alleges that
following the entry of the order the widow went into
possession of these three properties; that December
1, 1919, the plaintiff, A. S. Skyles, and one Rowan,
relying upon the validity of these proceedings and
the facts recited in the order, and without any notice
or knowledge of the claims of the defendants pur-
chased from the widow this lot for a cash considera-
tion of $11,000; it alleges that this was the fair

market value of the lot.   Further it averred that the
two men assumed all the liens and assessments and
received a full warranty deed conveying the fee-simple
title; that they recorded their deed at once and pro-
ceeded forthwith to claim title.   The allegation con-
cludes with the additional averment; "all of which
was well known to these defendants."   Next the reply
alleges that the plaintiff and Rowan went into pos-
session at once, and that in further reliance upon
the foregoing proceedings repaired the roof and
foundation of the building at an expense of $1,000,
and made other repairs and alterations at an addi-
tional expense of $1,000; that they paid taxes amount-
ing in 1920 to $388.09, in 1921 to $462.80 and in 1922
to $465.00 and in 1923 to $234.65.   This paragraph
concludes: "all of which was and is well known to
these answering defendants."   The reply continues
that on December 16, 1919, Joseph reached the age
of majority, and that February 12, 1921, Marie be-
came of age.   That neither of them then or at any
other time repudiated the compromise agreement
entered into September 9, 1918, and have never at-
tacked the validity of the order dated September 18,
1918.   In fact the reply alleges all three of the
children have remained "silent and mute."   It avers
that February 28, 1922, the plaintiff T. G. Skyles in
reliance upon the foregoing proceedings and without
any notice or knowledge of the claims of the defend-
ants purchased from Rowan his one-half interest in
the lot for $5,000, which the plaintiffs say was the
fair market value of the fee; that he received a gen-
eral warranty deed and recorded it March 2, 1922,
"all of which was well known to these defendants."
It is further alleged that the widow is insolvent, and
that during the Astoria conflagration of December,

1922, the wooden building on this property was destroyed and later the city enacted an ordinance prescribing a fire district which includes this lot, and that therefore the plaintiff cannot erect a wooden building on it. That in order to make the site sufficiently large for a suitable building, the plaintiffs February 3, 1923, purchased an adjoining one-half lot for a cash consideration of $6,000; that in making this purchase they relied upon the validity of the foregoing proceedings and the truth of the facts set forth therein; that the half lot is too small to be of any value without the lot purchased from the widow. Further the reply set forth that the plaintiffs incurred a liability of $4,000 in the erection of a party-wall. The reply concludes that the defendants should be estopped to assert their title if they have any by reason of the foregoing facts.

The defendants demurred to this reply on the ground that these allegations are insufficient to constitute a defense to the matter set forth in the answer. The demurrer was sustained, the plaintiffs refused to plead further and the defendants moved for judgment on the pleadings. The motion was allowed; the plaintiffs appeal.

Plaintiffs seek to uphold the validity of their title upon the following grounds: First, that the County Court acted within its jurisdiction when it made this order and that therefore the order was valid. Second, that the order of September 18th was valid as a consent decree; third, that defendants are estopped to deny the validity of the court's order on account of their conduct following its entry; fourth, they claim title by estoppel.

Reversed in Part.   Affirmed in Part.   Rehearing Denied.

For appellants there was a brief over the name of *Messrs. Norblad & Hesse.*

For respondents there was a brief over the name of *Messrs. G. C. and A. C. Fulton.*

ROSSMAN, J.—Attached to the answer is a copy of report of the board of commissioners; accompanying the latter is a copy of a brief written agreement entered into by the widow and three children. Defendants contend that this latter document is protected by the parol evidence rule and that hence all recitals in the two orders in excess of the agreements set forth in this memorandum must be ignored. Whether this document constitutes the final repository or integration of the agreement of the parties is a matter which the trial judge will determine when evidence of the surrounding circumstances puts him in the position of the parties when they executed this document.    Be this at it may, the *nunc pro tunc* order of September 18th, after mentioning this written document, recites: ''It was further agreed in open court that the widow, Elizabeth Schamberger, should take the land hereafter described in full of all her rights in, and claims against the estate as an heir, widow, creditor, and every other capacity, and that the legal title to all of said land in fee simple should be awarded to the said Elizabeth Schamberger. * * ''

1. Since the demurrer admits the truthfulness of the foregoing, we cannot ignore it.    It is argued that the widow made a poor bargain for herself if she agreed to take nothing more than a life estate in the three properties.    However, we understand from the facts pleaded that practically all of deceased's prop-

erty was vacant. Elizabeth was deceased's second wife and was not the mother of the defendants.

The question now presents itself, Did the County Court have jurisdiction to make the *nunc pro tunc* order of September 18th, and the order of September 9th, if the latter is construed as one which takes title out of one individual and vests it in another? Section 936, Or. L., provides:

"The county court has the exclusive jurisdiction in the first instance, pertaining to a court of probate; that is,— * * 4. To direct the payment of debts and legacies, and the distribution of the estate of intestates; 5. To order the sale and disposal of the real and personal property of deceased persons; * * 8. To direct the admeasurement of dower."

In "Courts and Their Jurisdiction," by John D. Works, we find a discussion of what constitutes probate matters. From Section 67 we quote the following:

"As jurisdiction is sometimes given of 'all probate matters' without defining such jurisdiction, the question has been presented in some cases as to what is included in the term probate matters.

"A court of probate has been defined as 'a court exercising jurisdiction over the estates of deceased persons, possessing, as to personal assets, nearly all the powers formerly exercised by the courts of Chancery and the ecclesiastical courts of England.' And it is said that 'such courts collect the assets, allow claims, direct payments and distributions of the property to legatees or others entitled, and generally, do everything essential to a final settlement of the affairs of the deceased, and the claims of creditors against the estate.' But this does not extend to controversies between the estate and third parties not claiming under such estate or as creditors of it; or to cases where the question whether the party is a

creditor or not, depends upon the determination of some matter not within the jurisdiction of the probate court. Questions of title to real estate, for example, arising, not under a claim to receive it in the distribution of the estate, but adversely to such estate, do not fall within the jurisdiction of a probate court, nor can it determine the rights of strangers to property in the course of administration. But when it becomes necessary to pass upon a question of title in order to ascertain and determine who are entitled as distributees of the estate, a probate court has jurisdiction to pass upon the question. So, where the determination of the question of title is necessary for other purposes in the administration of the estate: and a probate court having power to determine who are the proper distributees of an estate has power to inquire into the legitimacy of children claiming to be entitled to distribution; and to determine every disputed question of fact necessary to ascertain the amount due to each distributee; and may, for the purposes of distribution, construe a will. Such jurisdiction extends to the distribution of the estate, or a part of it, to persons claiming under the heirs, as this is a part of the settlement of the estate. And the court has jurisdiction to determine whether such assignment was made or not as between the claimant and the heir.''

2. We do not believe that the foregoing language of Section 936 is sufficient to authorize a probate court to take title out of one group of individuals and vest it in some third individual under the circumstances we are dealing with.

3. It is argued that the order can be upheld as a consent decree. Consent decrees are ineffective where the court lacked jurisdiction of the subject matter: Freeman on Judgments, § 1309. Since the court could not have entered this judgment pursuant to litigation, it could not enter it pursuant to consent.

Plaintiffs also seek to uphold their title under the doctrine of estoppel *in pais*. The conduct which they rely upon is that the defendants permitted the foregoing orders to remain in the files of the County Court from which it appeared that they and the widow agreed that the latter should have title to this lot; that without protest and without asserting the title that was vested in themselves they permitted the widow to give to one of the plaintiffs, and another Rowan, a general warranty deed purporting to convey title in fee simple, for which the purchasers paid the full market value of the property. That subsequently Rowan's undivided one-half interest was purchased by the other plaintiff with the knowledge of the defendants, he paying the full market value of the interest he acquired. That plaintiffs made improvements in the nature of a party-wall, added another one-half lot to lot three (3), and that the defendants permitted the plaintiffs to pay taxes and discharge assessments levied upon the property under the belief that the plaintiffs were the owners of the property. The complaint alleges that the party-wall was constructed on the east line of the west one half of lot two; we understand from this statement that the wall was not built on lot three. The only events that occurred after Joseph and Marie reached their ages of majority, were the sale of a one-half interest by Rowan to the plaintiff T. G. Skyles; the purchase by plaintiffs of an adjoining one-half lot, the erection of a party-wall and the payment of taxes and assessments. The doctrine of estoppel *in pais* and the elements comprising it were discussed by this court at some length in the recent case of *Bramwell* v. *Rowland* (Or.), 261 Pac. 57. We find it unnecessary to add anything to the statement of the law therein set

forth, except to determine its application to minors and to the facts of this case. In Pom. Eq. Juris. (4 ed.), Section 815, the application of estoppel *in pais* as applied to minors is set forth in these words:

"The disability of infancy seems to have limited the operation of the equitable estoppel more than that of coverture. Since an infant is not directly bound by his ordinary contracts, unless ratified after he becomes of age, so obligations in the nature of contract will not be indirectly enforced against him by means of an estoppel created by his conduct while still a minor. On the other hand, an equitable estoppel arising from his conduct may be interposed, with the same effect as though he were adult, to prevent him from affirmatively asserting a right of property or of contract in contravention of his conduct upon which the other party has relied and been induced to act."

31 C. J., page 1005, considers the same matter and expresses the rule substantially similar to Professor Pomeroy's exposition. We have read the cases cited in the footnotes and find that they support the text. In Spencer Bower on Estoppel by Representation, paragraph 222, the application of estoppel to minors is thus expressed:

"Infants have been protected against those whose business it is to prey upon them, and against themselves, by the common law from the earliest times, and now by the legislature, which has rendered all contracts made by an infant, with certain exceptions, not voidable merely, but void. Foreseeing that the efficacy of the statute would be entirely destroyed if a minor were to be allowed, by representations of majority, or otherwise, to estop himself from asserting the voidness of any such contract, the courts have always unflinchingly disallowed the estoppel and have given effect to the affirmative plea. Of course, as has been elsewhere indicated, an infant, to the extent and under the conditions there mentioned, can make him-

self liable by representation to an estoppel the allowance of which does not necessarily involve the validation or recognition of the void contract''; the reference is to paragraph 194:

''The position of an infant, as regards contracts made by him during his minority, is strongly entrenched behind both common law and statutory rules for his protection. It is a corollary from these rules that a representation made by an infant representor is not allowed to operate against him as an estoppel, where such estoppel, if allowed, would have the effect of depriving him of this protection against liability on his contracts,—which is the case in the vast majority of a minor's representations. It is otherwise, of course, where the infant's representation can be put as fraud. And where the representation was made on behalf of the infant by his guardian, or next friend, or other person legally competent to bind him by such representation, the infant on attaining his majority, or the person so making the representation on his behalf until that event, as the case may be, is liable to be estopped thereby.''

In Bigelow on Estoppel (6 ed.), page 627, we find:

''The authorities, on the other hand, are not few or obscure which maintain the proposition that if an infant of years of discretion knowing that he has a right to an estate encourage a purchaser to buy it of another without asserting any claim to it, the purchaser will hold it against the infant. It appears to be the better doctrine with these authorities that both infants (of years of discretion) and married women may be estopped to set up a claim to their property against a purchaser. Both are liable when properly sued for their torts in an action which does not seek the enforcement of a contract or demand damages for repudiating, or for fraudulently inducing the plaintiff to make, a contract; and in an action for a fraudulent representation of title whereby the plaintiff has been induced to expend money for the purchase of property belonging in reality to the defendant the measure of

damages must of course be the sum paid. Now, to prevent a circuity of action (which indeed is the ground of many estoppels, if not also of this very class of equitable estoppels) it is but right on analogy that the infant or *feme* should be rebutted when proceeding to regain possession. Certainly this would seem proper when the party so proceeding has no other property with which to answer the purchaser for the deceit. We do not say that the existence of an estoppel by conduct always depends upon the existence of a right of action for deceit; but we apprehend that while there may be an estoppel without this right of action in some cases, the estoppel always arises where the action of deceit would be maintainable."

These statements do not differ substantially so far as the facts before us are concerned.

4. We will now consider whether Joseph and Marie are estopped from asserting their title. In the first place it will be noticed that there is no allegation that the various assessments have been discharged. Next it is deserving of notice that it is ordinarily the duty of the life tenant to pay the taxes. The rule is thus set forth in Tiffany on Real Property (2 ed.), page 85:

"The life tenant is ordinarily under an obligation to pay the taxes as they accrue from year to year, to the extent, at least of the income which he receives from the property. * * Municipal assessments for improvements of a permanent or *quasi*-permanent character, are to be apportioned upon an equitable basis between the life tenant and remainderman, though if for improvements so temporary in character that they will probably not outlast the life tenant's life they must be borne by him alone."

5. We have held to the same effect in regard to the payment of taxes of a life tenant in *Abernethy* v. *Orton,* 42 Or. 437 (71 Pac. 327, 95 Am. St. Rep.

774). The party-wall not having been constructed upon lot three, but twenty-five feet away from it, should be eliminated from consideration. These defendants received nothing from the plaintiffs. While it is true the defendants allowed the two orders of the County Court to remain on file after they had reached their ages of majority, it is equally true they could not have expunged the orders from the files had they so desired. The orders themselves notified all that Joseph and Marie were minors. No act is charged against the minors that could be designated as fraudulent, or as having been committed with an intent to influence the plaintiffs. The minors do not ask that the plaintiffs be required to perform any affirmative act. The record does not disclose that the widow had applied for any support money: while she waived her administratrix fee, she had not completed the administration of the estate; hence we assume that another's services were required to complete the task she begun. Whether the minors were in fact benefited by her services is therefore doubtful. The events which occurred after the minors Joseph and Marie reached their majority are insufficient, in our opinion, to constitute the basis of an estoppel.

But with the other defendant, Marguerite Kincaid, the situation is different. She was of the age of majority at all the times when the above events were transpiring, and actively participated not only in her individual capacity, but also in her representative capacity as guardian *ad litem* for Joseph. Her activities were direct causes of the filing of the orders of September 9th and 18th in public offices.

6. One may lose the right to assert his title by allowing another to hold out himself as the owner,

and thereby mislead an innocent third party into
dealing with the latter and paying him the purchase
price of the property under the honest belief that
the buyer is dealing with the owner. In 10 R. C. L.,
page 780, this rule is stated thus:

"It has been held in many cases that if the owner
of land knowingly stands by and permits his prop-
erty to be mortgaged or sold by another to one who
is to the owner's knowledge relying on the apparent
ownership of the person executing the conveyance,
such conduct, irrespective of who benefits by the
transaction, will estop the owner from asserting
his title against the mortgagee or grantee. In that
class of cases it is considered that there is a legal
obligation to speak, and that concealment is such a
fraud as will forfeit the title."

In 21 C. J., page 1172, the editor states the same
rule in these words:

"Where the true owner of property holds out
another, or allows him to appear as the owner of or
as having full power of disposition over the property,
and innocent third persons are thus led into deal-
ing with such apparent owner or person having such
apparent power of disposition, they will be protected.
However indisputable were the intentions of the
owner not to surrender his ownership, when he has
surrendered the possession and exhibited the person
who has that possession to the world as one having
the power to dispose of the property, he will not
be heard against an honest buyer who had acted
upon the confidence imprudently reposed by the
owner. * * Nevertheless, the rule, although general
in its terms, operates only to protect those who, in
dealing with others, exercise ordinary caution and
prudence, and as against those who have voluntarily
conferred upon others the usual evidences or *indicia*
of ownership of property, so that they have apparent
authority to dispose of it."

See to the same effect, Thompson on Real Property, Section 2505. The above rule was recognized by this court in *Bush* v. *Roberts,* 57 Or. 169 (110 Pac. 790), and in *Grand Prize Hydraulic Mines* v. *Boswell,* 83 Or. 1 (151 Pac. 368, 162 Pac. 1063).

7. This defendant, Marguerite Kincaid, occupies a somewhat different position from that of the ordinary individual who stands silently by and sees money expended upon his property by one who believes himself to have title, because she alleges she owns the remainder and does not deny that the plaintiffs have some estate. Rules of law analogous to those applicable to this phase of the case were discussed by this court at considerable length in the recent case of *Calvary Baptist Church* v. *Saxton,* 117 Or. 125 (242 Pac. 616); we deem it unnecessary to add anything to the discussion set forth therein. In other words, if the defendant was in fact aware of the foregoing *nunc pro tunc* order and the recitals contained within it, and was aware of the fact that the widow was proceeding to deal with this property as if she were the owner of the fee, and knew that the plaintiffs were dealing with her and expending their money under the honest belief that the recitals contained in the *nunc pro tunc* order were true and had no knowledge to the contrary, the doctrine of estoppel *in pais* would become applicable.

8. Counsel for defendants assert that the order of September 18th was never filed in the office of the county clerk as provided by Section 1062. If we give full effect to the matter set forth in the order, the defendant was fully acquainted with the contents of the order; hence, so far as she was concerned filing the order in the office of the county clerk, even if necessary, would have accomplished no useful purpose.

It follows that the Circuit Court erred when it sustained the demurrer so far as the defendant Marguerite Kincaid was concerned, and also when it entered judgment in her favor. Its decree should, therefore, be reversed so far as the defendant is concerned; costs in favor of all defendants, except defendant Marguerite Kincaid. As to her, plaintiffs may have costs.

REVERSED IN PART.    AFFIRMED IN PART.    RE-HEARING DENIED.