Argued at Pendleton May 7; modified June 26; objections to
cost bill overruled July 24, 1934

# MILTON WAREHOUSE CO. *v.* BASCHE-SAGE HARDWARE CO. ET AL.

(34 P. (2d) 338, 978)

*Herbert C. Bryson,* of Walla Walla, Washington, for appellant.

*Blaine Hallock,* of Baker (Hallock, Donald & Banta, of Baker, on the brief), for respondent Basche-Sage Hardware Co.

*John F. Kilkenny,* of Pendleton (James H. E. Scott, of Milton, and Raley, Raley & Warner and Alfred F. Cunha, all of Pendleton, on the brief), for respondent Milton Warehouse Company.

568

BEAN, J. It is stated in the brief of counsel for appellant that the appeal will be considered and the assignments of error treated under two broad general heads, namely, (1) the ownership or share of each of the defendants in the wheat in controversy, and (2) the duties, rights and liabilities of plaintiff warehouse company. We will endeavor to so consider the appeal.

◼ The first question for determination is as to the share of each of the parties under and by virtue of the will of Higby Harris and the deed referred to. As stated, Mrs. Harris, by virtue of the will, was bequeathed one-half of the income from the home place, which all of the legatees have agreed in regard to the description. No one questions her right to one-half or five-tenths of the crop in question by virtue of this bequest. Higby Harris was the owner in fee simple of all of the land which he devised to his wife and four children. One-fifth of the real estate, by virtue of Clause III of his will was devised to his widow, Laura Harris. No one questions her title in fee simple to one-fifth of all the lands of the Higby Harris estate. The question is, what portion of the crop is she entitled to by virtue of such ownership? After deducting one-half or five-tenths of the crop in question as income, under the second clause of the will, it leaves one-half or five-tenths of the wheat to be divided according to the ownership of the land. One-fifth of five-tenths is equal to one-tenth of the wheat. Therefore, Laura

Harris is entitled to five-tenths of the crop of wheat on the home place, as income, and one-tenth as the owner in fee simple of one-fifth of the land, which is equal to six-tenths of said wheat crop. The other legatees and their representatives in interest are therefore entitled to one-fourth of what remains, or one-tenth each.

Let us figure it another way. Suppose Mrs. Laura Harris should execute a warranty deed conveying her title in fee simple to the land embraced in the home place. Her grantee would be the owner in fee simple of one-fifth interest in such land and would therefore be entitled to a one-fifth interest, or two-tenths of the crop grown thereon. Mrs. Harris, by such conveyance, would convey her one-fifth interest in the title to the land, which would carry the crop raised thereon, including one-fifth of her interest in the income of the home place, or two-tenths, leaving four-tenths for the other legatees and their representatives, or, in other words, by such conveyance, Mrs. Harris would convey the right to obtain one-tenth of the crop which she has by virtue of Clause II of the will, and one-tenth of her right to the crop by virtue of Clause III of the will. Again, it is noticed that in Clause III, after providing that the four children and Mrs. Harris should take all of the remainder of the property, it is explained that each of the children should have one-fifth of such estate, and the wife, Laura Harris, is to have one-fifth of said estate. Let us suppose that the name, Laura Harris, was Laura Harris, Jr., or some other person than Mrs. Harris. Could there be any question but what such persons would be devised one-fifth of the remainder of the real estate and personal property of Higby Harris? The writer sees no difference, as to devising the real estate, from what it would be if a

provision had been made for Laura Harris, the widow, to have, say, $1,000, to be paid from the income of the home place, and, after such payment, the remainder to be devised as provided by Clause III.

■ The controlling rule, in determining the meaning of a will, is to give effect to the true intent and meaning of the testator, as the same is gathered from the whole instrument. As it is often said, we should take a will by its four corners and not from detached portions alone: 1 Schouler on Wills (5th Ed.) § 468; 40 Cyc. 1388, 1389; *Gildersleeve v. Lee,* 100 Or. 578 (198 P. 246, 36 A. L. R. 1166). It seems that there is no real necessity, strictly speaking, for a construction of the will. It appears plain. The law requires the court to obey the directions of a will and to carry out the true meaning of the testator as therein expressed: *Roots v. Knox,* 107 Or. 96 (212 P. 469, 213 P. 1013); *Wemme v. First Church of Christ,* 110 Or. 179 (219 P. 618, 223 P. 250).

In *Harris v. Harris,* supra, Mr. Justice RAND, in the partition suit, so-called, referring to the same will and the deed referred to, said:

"It appears that the testator owed no debts at the time of his death and that the estate has been fully administered and all the property distributed in accordance with the provisions of the will, and that subsequent thereto a deed was executed by said devisees confirming to each of them their respective rights and interests in the home place in exact accordance with the provisions contained in the will."

And then quotes from the deed.

*Harris v. Harris,* supra, was a suit instituted by Ernest Harris and wife on December 6, 1929, against Laura Harris, and other parties deemed to be interested, for a partition of all the lands devised by Higby

Harris in his will. On appeal to this court, it was held that the home place could not be partitioned and the cause was remanded for the purpose of permitting the parties to partition the land, excepting the home place, which suit is still pending in the circuit court. The pleadings in that case were introduced in evidence in the present suit.

■ One of the first questions for us to consider is the matter of interpleader. Section 71-216, Oregon Code 1930, which is a portion of the Uniform Warehouse Receipts Act, provides:

"If more than one person claims the title or possession of the goods, the warehouseman may, either as a defense to an action brought against him for non-delivery of the goods, or as an original suit, whichever is appropriate, require all known claimants to interplead."

There is practically no question but what there was a dispute as to the title and possession of the wheat involved. If the warehouse company issued receipts to the other parties, as claimed by them, Mrs. Harris threatened to bring suit against the warehouse company. If the warehouse company issued the receipts as claimed by Mrs. Harris, Basche-Sage Hardware Company indicated that it would also sue the warehouse company. Claude Harris was in the same position. There was more wheat claimed by the different parties than the plaintiff held in its warehouse. The officers of the warehouse company were perfectly willing to deliver the wheat to the parties entitled thereto as soon as it was determined, so that they would not be liable after such delivery, and to issue proper receipts therefor. Mr. F. M. Kent, president of the warehouse company, testified that they were willing and anxious to issue receipts for the wheat if

they knew to whom they should be issued. "Wagon" receipts, stating the number of sacks, etc., were issued at the time the wheat was taken into the warehouse. After the demands, which totaled more wheat than the warehouse company had, were made upon the warehouse company, the parties maintained negotiations for a settlement until about October 18, 1932. The land upon which the wheat was raised is situated near the warehouse and it appears that the officers of the plaintiff and the Harris family were quite well acquainted. On that date, plaintiff, at the suggestion of counsel for appellant, directed a letter to each of the claimants stating, in substance, that a warehouse receipt for one-half of the wheat had been issued to Laura Harris, for one-tenth to Martha Harris and for one-tenth to Mable Harris, and further stating that the warehouse company was holding in its possession receipts for three-tenths until the matter was decided in the courts, giving as its reason the fact that there was an adverse claim to this wheat. The appellant never called for her receipt and refused to accept any amount of wheat less than six-tenths of the amount deposited. None of the receipts were called for. The warehouse company never claimed any interest in the wheat, and, as stated, was ready and willing at all times to issue warehouse receipts to the respective parties, as soon as the parties agreed, or it was determined, as to their respective shares. The warehouse company was in no way interested in the division that should be made of the wheat, but solely in protecting itself against an action for damages. It finally determined that a settlement could not be effected between the parties, and, on December 28, 1932, instituted the present suit to require defendants to interplead.

Counsel for appellant urges that the issue as to this particular crop (of 1931) being still before the lower court in the partition suit, and undecided, the appellant was in no position to proceed against this plaintiff, nor was any other owner of the wheat in position to do so since the issue was already pending in a court of competent jurisdiction for decision in a suit wherein all parties in interest were parties, but we do not understand that the warehouse company was a party to that suit or would naturally think there was any necessity for bringing suit for an interpleader at that time. It is sometimes thought by business men that it is well to make haste slowly in commencing litigation.

Appellant and Martha Harris and Mable Harris, in their answer, asked the court to compel the parties to interplead and attempted by counter-claim to hold the warehouse company liable in damages for holding their shares after demand had been made for negotiable warehouse receipts. It is practically admitted by all parties interested that an interpleader suit was appropriate. We find in 27 R. C. L. 1009, § 70:

"Under the uniform warehouse receipts acts, if more than one person claims the title of possession of the stored goods, the warehouseman may, either as a defense to an action brought against him for nondelivery of goods, or as an original suit, require all known claimants to interplead. And to make such right of interpleader effective, the warehouseman is allowed a reasonable time in which to ascertain the validity of adverse claims or to bring legal proceedings to compel the complainants to interplead."

■ An application was made to the trial court to consolidate this suit for all purposes with the partition suit mentioned. Appellant assigns error of the court

in refusing to so consolidate the two cases. The court declined to consolidate them for all purposes but heard the two cases, after the partition suit had been remanded to the circuit court, at the same time, with the understanding that the testimony in one should be considered as testimony in the other, as far as applicable. It was apparently necessary that the present suit be determined at as early a date as practicable and the wisdom of the court in refusing to consolidate the two cases is shown by the fact that the partition suit is still pending and no doubt would have delayed the final hearing of the present suit if there had been a consolidation. It rests in the sound discretion of the trial court as to whether the two cases should be con-. solidated: § 7-104, Oregon Code 1930.

█ It is assigned that the court erred in finding that the plaintiff is entitled to have and recover warehouse charges on the portion of the wheat in controversy belonging to the appellant, Martha Harris and Mable Harris from and after the date of their demand for warehouse receipts for said wheat and the plaintiff's refusal to issue or deliver the same. The testimony in the case, we think, plainly shows that the charges made by the warehouse company, to which it is entitled under the law, were reasonable and that plaintiff is entitled to such reasonable charges, it having held the wheat for a valid reason, that of ascertaining the amount of the shares of the several owners.

Section 71-226, Oregon Code 1930, provides that, subject to the provisions of section 71-229, a warehouseman shall have a lien on the goods deposited or on the proceeds thereof in his hands for all lawful charges for storage and preservation of the goods. The sections referred to give a warehouseman a first and prior lien on the wheat stored by the tenant. Sec-

tion 71-207 directs that a warehouseman, in the absence of some lawful excuse provided by this act, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied with an offer to satisfy the warehouseman's lien. Therefore, when the wheat is delivered, the plaintiff will be entitled to reasonable charges for storage.

██ It is suggested by appellant that when the interpleader suit was tried, plaintiff company was silent on the question of storage charges and as to foreclosure of any lien therefor. After a time the court requested them to introduce testimony showing the reasonable charges for storage of the wheat, which we think was a proper question as the wheat cannot be delivered without the reasonable charges being liquidated. While the decree provides for a foreclosure of the lien for warehouse charges and sale of the wheat therefor, we do not deem that necessary, as the wheat is subject to reasonable charges and cannot be delivered or shipped without such charges being paid, and, as we view it, it is unnecessary for a decree to provide for the foreclosure of the lien for warehouse charges.

While, as a general rule, the only thing that can be tried out in an interpleader suit, in so far as plaintiff is concerned, is whether the stakeholder is entitled to a decree requiring the defendants to interplead, yet, in handling wheat and storing and shipping the same, the question of expense thereof is naturally incident thereto. See *North Pacific Lbr. Co. v. Lang,* 28 Or. 246 (42 P. 799, 52 Am. St. Rep. 780); *Maxwell v. Frazier,* 52 Or. 183 (96 P. 548, 18 L. R. A. (N. S.) 102); *Conner v. Bank of Bakersfield,* 174 Cal. 400 (163 P. 353). The same case appears in 183 Cal. 199 (190 P. 801).

■ Appellant submits the question of payment of taxes by her. It was her duty as a tenant for life, which she is considered, to keep the taxes on the land paid, if the estate is sufficient for that purpose: *Moore v. Simonson,* 27 Or. 117 (39 P. 1105). In *Abernethy v. Orton,* 42 Or. 437 (71 P. 327, 95 Am. St. Rep. 774) it was held that a tenant for life of real estate is compelled to pay taxes and expense of repairs out of the rents and profits, whether such life estate comes by will, conveyance or operation of law, unless he voluntarily pays them out of other funds: *Skyles v. Kincaid,* 124 Or. 443, 457 (264 P. 432).

Appellant submits: "The life tenant of real property owes both the estate and the remaindermen the duty of paying taxes thereon." Citing *St. Paul Trust Co. v. Mintzer,* 65 Minn. 124 (67 N. W. 657, 32 L. R. A. 756, 60 Am. St. Rep. 444); *DeFreese v. Lake,* 109 Mich. 415 (67 N. W. 505, 63 Am. St. Rep. 584, 32 L. R. A. 744); *Huston v. Tribbetts,* 171 Ill. 547 (49 N. E. 711, 63 Am. St. Rep. 275): "The duty to pay taxes and street assessments rests primarily on the life tenant.": *Los Angeles County v. Winans,* 13 Ca. App. 234 (109 P. 640).

Laura Harris, Martha Harris and Mable Harris, in their answer to plaintiff's complaint, paragraph IX, alleged that on July 2, 1931, David Harris and Ernest Harris separately executed and delivered to Claude Harris, one of the defendants, bills of sale for their respective interests in the crops on the premises, requiring said Claude Harris to apply said crops to the payment and discharge of one-fifth of the 1930 taxes and taxes for the previous years upon the real estate described. It is further alleged:

"Said bills of sale were regularly filed for record in the office of the recorder of conveyances for Umatilla County, July 3, 1931, and recorded in Chattel

Mortgage Book No. 58 at pps. 595 and in the office of the clerk of this county where the same was filed in Book 5 p. 459, Miscellaneous records in said office. That, at the time of the execution thereof the said Ernest Harris and David Harris were each of them the owners, or reputed owners, of their distributive shares in the crop of wheat involved in this suit and the same and all thereof became impressed with the lien and obligation for taxes due the defendant Laura Harris.''

Claude Harris, in reply to the answer of Laura Harris et al., in paragraph V:

''Admits paragraph IX thereof, except that this defendant denies that by reason of said bills of sale or otherwise, the shares of Ernest Harris, and David Harris, or of either of them, in the wheat involved in this suit became impressed with the lien and obligation for the taxes due the defendant Laura Harris, to any greater extent than one-eighth of the 1930 taxes on the 'home place'.''

It will therefore be seen that Claude Harris admits the facts in regard to the bill of sale, but denies the conclusion as to the effect thereof.

The bills of sale of Ernest Harris and David Harris, which are identical, as it appears therefrom, were executed in consideration of $10 and other valuable consideration, and they purport to assign and transfer the crop of 1931 on all the lands of the Higby Harris estate. Each of the bills of sale provides as follows:

''the same to be applied by the said Claude Harris, to the payment and discharge of my one-fifth portion of the 1930 taxes upon said lands and taxes for previous years, and if any surplus remain, the same to be applied upon the notes and mortgages now held by the said Claude Harris upon my undivided interest in the lands of the said Higby Harris Estate.''

and also directs the tenants on the lands to turn over and pay to Claude Harris their portion of said crop and the rents. Apparently the payment of the taxes was the major part of the consideration for the bills of sale. The circuit court found as to Claude Harris' share of the 1931 crop as follows:

"Claude Harris is claiming an interest in the 1931 crop of wheat by virtue of an assignment from David Harris of his interest in said crop. The instrument provides that Claude Harris shall apply the proceeds of the crop to the payment of his one-fifth portion of the 1930 taxes and to his portion of the taxes for previous years. By accepting the assignment, Claude Harris consented to this provision and his share of the 1931 wheat is charged with David Harris' share of the 1930 and 1929 taxes paid by Laura Harris. The share of said taxes chargeable to David Harris is one-eighth of the whole instead of one-fifth as assumed.

"The plaintiff is entitled to charge its reasonable storage charges against the respective shares of the 1931 crop of wheat so stored in its warehouse, except that no charges should be allowed during the period from the 24th day of July, 1933, the date that the court re-opened the case to permit the plaintiff to amend his complaint to take testimony as to warehouse charges on the wheat in question until this date of September 18, 1933.

"The rates customarily charged by the plaintiff during such period were $1.00 per ton from date of storage until January 1st, 1932 and 10c per ton per month thereafter or until in this case, of July 24th, 1933; and 10c per month per ton thereafter."

These quoted findings we heartily approve, except as to the portion of the interests of the respective parties. The court made findings as to the respective shares of wheat, and, as we understand, these figures, as to the amount of the wheat stored in the Milton warehouse, are not questioned, as follows: 147,097

pounds of Federation wheat, and 227,943 pounds of Albit wheat. From this wheat, the court found that Laura Harris had withdrawn 22,724 pounds of Federation wheat and 415 pounds of Albit wheat, and rendered a decree accordingly.

Modifying the decree of the trial court as to the shares of wheat of the respective parties, it would be as follows: Laura Harris is the owner of six-tenths of said wheat, less withdrawals, leaving her 65,534 pounds of Federation wheat, and 136,350 pounds of Albit wheat. Basche-Sage Hardware Company, a corporation, is the owner of one-tenth of said wheat, namely, 14,709 pounds of Federation wheat and 22,794 pounds of Albit wheat. Claude Harris is the owner of one-tenth of said wheat, namely, 14,709 pounds of Federation wheat, and 22,794 pounds of Albit wheat; and Martha Harris is the owner of one-tenth of said wheat, namely, 14,709 pounds of Federation wheat, and 22,794 pounds of Albit wheat, and Mable Harris is the owner of one-tenth of said wheat, namely, 14,709 pounds of Federation wheat, and 22,794 pounds of Albit wheat. But the respective shares herein set forth are subject to the Milton Warehouse Company's reasonable charges for the storage of said wheat. Laura Harris paid the taxes on the land for the three years mentioned and Martha Harris and Mable Harris have paid their portion of the taxes to Laura Harris. Mrs. Harris paid the taxes for 1931 on the home place, $1,742.05. The share of Claude Harris is impressed with the following liens in favor of Laura Harris, namely a lien of $218.05 for one-tenth of the 1929 taxes; and $221.47 for one-tenth of the 1930 taxes against the wheat of Claude Harris; and a lien of $174.20, one-tenth of the 1931 taxes, making a total of $613.72, all of which were paid by Laura Harris on

the home place, pursuant to the respective ownership of the shares and by virtue of the bills of sale accepted by Claude Harris from David Harris, and the stipulation of the parties made in open court. The Basche-Sage Hardware Company's share is impressed with a lien of $174.20, one-tenth of the 1931 taxes paid by Laura Harris on the home place upon the wheat of Basche-Sage Hardware Company, as successor in interest of Ernest Harris.

The interest of the Basche-Sage Hardware Company in this suit is by virtue of their attachment, judgment and sale of the interest of Ernest Harris in the home place, with other property, the sale being on January 28, 1931. The home place was subject to certain prior liens by way of mortgages and judgments, and Basche-Sage Hardware Company was in possession of that land for practically one year. While the taxes were upon the interest in the land, it was agreed in open court that this company will pay the taxes in proportion to their interest in the wheat, which, as we have indicated, is one-tenth. They did not come into the picture until after the so-called stipulation made in open court, but before the bills of sale were executed by Ernest Harris and David Harris to Claude Harris. As an equitable portion of the taxes on the land, it is measured by the portion of their share of the wheat.

Regarding the Basche-Sage Hardware Company's portion of the taxes for 1929 and 1930, appellant contends that the Basche-Sage Hardware Company purchased the land encumbered by the taxes for those years. There is reference in the record to some sort of stipulation made in the partition suit, so-called. The proceedings of the trial court in the partition suit, at the time indicated that the stipulation was made, are

not a part of the record in this case. We are not informed of the language of the stipulation. Different attorneys represented some of the parties at that time, and the record does not show what that stipulation was. The Basche-Sage Hardware Company was not a party to that suit or to the stipulation, and the record in the present suit does not show that the taxes on the land for the years 1929 and 1930 were a lien upon the land at the time the land was attached, or that Basche-Sage Hardware Company was in any way bound to pay such taxes. The situation is different as to Claude Harris, who received bills of sale from Ernest Harris and David Harris of their interests in the wheat for the year 1931, which were acknowledged, filed and recorded as chattel mortgages, although it appears that Claude Harris obtained no benefit from Ernest Harris' share of the crop of wheat for 1931 on account of the attachment and sale.

■ There is now pending in the circuit court in the case of *Harris v. Harris,* supra, known as the partition suit, proceedings for an accounting between Mrs. Harris, who is treated as a life tenant of one-half of the home place, and the other devisees under the will of Higby Harris, and Claude Harris, successor in interest of David Harris. The Basche-Sage Hardware Company is not a party to that suit. Therefore, it is not practicable or proper for this court to pass upon any of the items of such accounting, except as to the taxes, to which we have referred. Therefore, this opinion and decree herein are without prejudice to any of the rights of the parties in such suit for an accounting, and all matters pertaining thereto, except as expressly referred to herein, are left for the circuit court to hear and determine in the regular way.

■ It is contended by appellant that the plaintiff did not act within a reasonable time to ascertain the

ownership of the wheat involved. We have already indicated that we view that question differently from appellant. It may be unfortunate that there was litigation between the devisees of the will of Higby Harris, and there may have been some delay in the trial of the case, which very often occurs. This is one of the hazards of litigation, for which plaintiff appears to have been in no way responsible.

█ Appellant urges that there was a conversion of the wheat by plaintiff, and that that feature of the case is similar to an action of trover, and that plaintiff is not entitled to its charges for storage. We held, in effect, in *Lee Tung v. Burkhart,* 59 Or. 194 (116 P. 1066), that in order to constitute a conversion there must be such a dominion over the property in question as to constitute a denial or repudiation of the owner's right or title. In the present case there was no conversion of the wheat by plaintiff. There was no exercise of dominion over the wheat in derogation of the owner's right. The warehouse company did not deny the ownership, right or title to the property and was at all times ready to issue receipts for, or to deliver, the wheat, when they could ascertain who were the proper owners thereof and it could do so without subjecting itself to litigation for damages. See, also, *Miller v. Hirschberg,* 27 Or. 522, 538 (40 P. 506); *Weinstein v. Mullen,* 116 Or. 549, 553 (240 P. 879).

Appellant assigns as error the striking out of appellant's second affirmative defense and counterclaim. This matter is embraced within the questions already discussed and determined.

It is urged that plaintiff is not a disinterested stakeholder, but entered into the contest as to appellant's rights, but we do not so find.

Plaintiff will recover its costs and disbursements herein, to be paid one-third each by defendants, Laura Harris, Claude Harris and Basche-Sage Hardware Company. No costs and disbursements will be awarded to any of the other parties. Each will pay his own costs. The costs in the circuit court will be as taxed by that court.

The decree of the lower court will be modified as above indicated and affirmed as modified.

RAND, C. J., and CAMPBELL and BAILEY, JJ., concur.

---

Objections to cost bill overruled July 24, 1934

ON OBJECTIONS TO COST BILL
(34 P. (2d) 978)

BEAN, J. This is a suit in the nature of an interpleader. It involves the crop of wheat grown in 1931 upon what is known in the record as the "home place" of the Higby Harris estate. A decision was rendered by this court awarding Laura Harris six-tenths of the wheat, less withdrawals made by her; Basche-Sage Hardware Company, one-tenth; Claude Harris, one-tenth; Martha Harris, one-tenth; and Mable Harris, one-tenth. The shares of the respective parties depended upon the construction of the will of Higby Harris, deceased. The plaintiff, Milton Warehouse Company, was awarded its costs. It filed a cost bill in this court amounting to $49. Basche-Sage Hardware that it should be awarded costs. Laura Harris claimed Company filed objections to the cost bill and claimed six-tenths of the wheat, Basche-Sage Hardware Company one-eighth, and Claude Harris one-eighth. Martha Harris and Mable Harris did not appeal and main-

tained neutral positions, particularly as against their mother, Mrs. Laura Harris.

■ The plaintiff stakeholder, Milton Warehouse Company, with which the wheat was stored and had been for some time during a controversy and litigation, was awarded its costs. There was no dispute as to one-half of the crop of wheat claimed by Laura Harris. However, she claimed a large amount of damages as against the Milton Warehouse Company and contested its right to storage charges. She, like the others, was interested in a settlement of the matter, and, in equity, should pay a portion of the costs.

■ In the trial court the Basche-Sage Hardware Company took a decree for one-eighth of the crop of wheat. Mrs. Laura Harris appealed and contested such decree, contending that the Hardware Company was entitled to only one-tenth of the crop of wheat, and prevailed in this court. While the Hardware Company claims to have been a disinterested party upon appeal, it was necessary for Mrs. Harris to appeal from the decree that company obtained; therefore, Basche-Sage Hardware Company should pay a portion of the costs, although that company owned an interest in the land for only one year and was interested in the crop for that time only. That company claims it did not render it necessary for the bringing of the interpleader suit, but its correspondence shows that litigation was contemplated if its rights were intrenched upon in the disposition of the wheat. As shown in the former opinion, the Milton Warehouse Company could not divide the wheat between the parties without hazarding litigation. There was unquestionably a dispute between the parties in regard to the division of the wheat.

Claude Harris was decreed a one-eighth portion of the crop by the circuit court. This rendered an appeal

necessary in order to change the same, and he should bear a portion of the costs.

██ In a suit of interpleader, if properly brought, plaintiff, upon being discharged, is entitled to his costs out of the fund deposited in court, if the property so deposited is of such a nature that it is available for the payment of costs, or he is entitled to judgment for costs against some of the defendants in the suit. He may be allowed, in certain cases, a lien on the fund for his costs, but that was not deemed necessary and no one is requesting it at this time: 33 C. J. 469, § 65.

██ The three contesting defendants were Mrs. Laura Harris, Basche-Sage Hardware Company and Claude Harris, and it was determined, in equity and good conscience, that each should bear a small portion of the payment of costs in this court. Martha Harris and Mable Harris were satisfied that their mother should obtain a favorable decree and did not appeal or contest any of the proceedings in this court.

We gave the matter serious consideration at the time of the rendition of the opinion and believe that the costs in this court were adjusted as equitably as possible. An interpleader suit is particularly of equitable cognizance.

The objections of Basche-Sage Hardware Company to the costs will be overruled and the application of the Basche-Sage Hardware Company for a judgment for costs is denied. According to the former opinion the costs in the circuit court will be taxed by that court. It may be that the positions of the respective parties in the contest in the circuit court varied from those in this court, and the circuit court is at liberty to tax the costs in the circuit court equitably and fairly.

RAND, C. J., and CAMPBELL and BAILEY, JJ., concur.