### BARBER STEAMSHIP LINES, Inc., v. N. P. SLOAN CO.

(Circuit Court of Appeals, Second Circuit. March 9, 1921.)

No. 138.

Shipping ⚙➡147—Compressed cotton measured according to system in use at port of shipment, instead of system in use at place where compressed.

Compressed cotton, being shipped from New York under a contract guaranteeing the cotton to be of a certain density to the cubic foot, should be measured, in ascertainment of the number of cubic feet, by the New York system of measuring a bale of cotton, around the bulge of the cotton, instead of by the system, in use at the place where the cotton was compressed and other Southern ports, of measuring the bale around the middle band between the bulges of the cotton.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Barber Steamship Lines, Inc., against the N. P. Sloan Company. Decree for libelant, and respondent appeals. Affirmed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Robert S. Erskine and Harry D. Thirkield, both of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., and Robert McLeod Jackson, both of New York City, of counsel), for appellee.

Before WARD, HOUGH and MANTON, Circuit Judges.

WARD, Circuit Judge. May 21, 1917, the N. P. Sloan Company entered into a freight contract with the Barber Steamship Lines, Inc., whereby they agreed to deliver 1,000 bales of compressed cotton which they guaranteed to be of a density of 32/34 pounds to a cubic foot and the steamship company agreed to transport it to Havre on the steamer Asborg for $5.50 plus 10 per cent. primage per 100 pounds. The obvious purpose of the guaranty was to insure the steamship company as to the amount of cargo space to be occupied by the shipment.

September 18, 1917, the Sloan Company shipped and the steamship company loaded upon the steamer Asborg 1,000 bales, which had been compressed at Savannah, Ga., forwarded by rail to Jersey City and thence by lighters to the steamer; the weight of the shipment being stated as 482,935 pounds. Upon arrival alongside 93 bales, taken at random to represent the whole shipment, were measured in accordance with the practice in New York by wooden calipers with a rule around the bulge of the cotton between bands, and this measurement showed a content of 17,795 cubic feet. The freight charged was on 17,750 cubic feet, $34,364; there being no explanation about the difference of 45 cubic feet. If the bales had been measured in accordance with the practice at Savannah and other Southern ports, around the middle band between bulges of the cotton, the bulges would have been excluded, and the number of cubic feet would have been 15,091; the freight on that measurement being $29,217.57.

It is obvious that the New York system of measurement would show the cubic space needed for the shipment, which was the purpose of the guaranty, and that the Savannah system would not. Judge Mack held that the New York system applied to a shipment by steamer sailing from New York under a contract containing this special guaranty, and we agree with him. It showed the weight per cubic foot to be 27 pounds, instead of 32/34 pounds as guaranteed.

The steamship company presented their bills for $34,364, while the Sloan Company refused to pay more than $29,217.57. Thereupon the steamship company notified the Sloan Company that 100 bales would be taken out of the steamer and reweighed by a certified government surveyor and remeasured by a certified government measurer, and asked the Sloan Company to have a representative present to see that the weights and measurements were taken correctly. The Sloan Company did send a representative, who admitted that the weights and measurements were taken correctly.

Thereupon it was agreed between the parties that the steamship company should transport the shipment under clean bills of lading at the rate of freight admitted to be due by the Sloan Company, on condition that the Sloan Company give a surety company bond in the amount of the excess claimed by the steamship company of $5,146.43, which is the

amount that would have been paid, had cotton of a minimum density of 32 pounds per cubic foot been carried on the cubic content by New York measurement, the condition of the bond being to pay any sum not in excess thereof that might be determined in favor of the steamship company in a suit to be begun by them against the Sloan Company.

There was a good deal of argument on the theory that the bales had been expanded as the result of handling, and especially if they had been screwed down in the hold. The proof is that they were not screwed down, and there is no evidence of any expansion. It is also sought to apply the terms on the back of the freight contract, which fix the compensation to be paid where standard bales fall short of the minimum density of 22½ pounds per cubic foot; but these terms do not apply to this contract for high-density cotton of a minimum density of 32 pounds per cubic foot.

The decree is affirmed.