DENT v. ALASKA PLACER CO.
Civ. No. 3781.

United States District Court
Alaska, Second Division,
Nome.
Sept. 7, 1948.

576

Charles J. Clasby, of Fairbanks, Alaska, for plaintiff.

C. C. Tanner, of Nome, Alaska, for defendant.

KEHOE, District Judge.

Plaintiff brings an action in ejectment against the defendant corporation and applies for a temporary restraining order pending the trial of the action.

The complaint alleges that the plaintiff is now, and for more than six years last past has been, the owner in fee as to all persons, save and except the United States of America, and has been and now is entitled to the exclusive possession of six placer mining claims all situated "on or across" the Niukluk River, except one claim situate on the right limit of that river. It further alleges that such locations specifically include the right of exclusive possession of all of the bed of the Niukluk River within the end lines of said claims, and that the defendant corporation, on or about the 15th day of September, 1947, ousted and ejected plaintiff therefrom, and now wrongfully and unlawfully withholds them from plaintiff to his damage in the sum of $120,000, by reason of its mining the same with a dredge, thus depleting plaintiff's estate. The defendant corporation admits that it has operated a gold dredge during the time and at the place alleged by the plaintiff.

It appears from the affidavits and pleadings filed in the case that the Niukluk River is a navigable stream, navigable in fact, and so declared to be in the case of the United States of America v. Clyde D. Glass et al., No. 3473, in this Court decided September 29, 1941.

The affidavits also set forth in full the Act of Congress, Public Law 383, 80th Congress, Title 48 U.S.C.A. § 301, approved August 8, 1947, under the terms of which both plaintiff and the defendant corporation claim they are entitled to conduct mining operations. The Act follows:

"The laws of the United States relating to mining claims, mineral locations, and rights incident thereto are hereby extended to the Territory of Alaska: Provided, That, subject only to the laws enacted by Congress for the protection and preservation of the navigable waters of the United States, and to the laws for the protection of fisheries, and subject also to such general rules and regulations as the Secretary of the Interior may prescribe for the preservation of order and the prevention of injury to the fisheries, all land below the line of ordinary high tide on tidal waters and all land below the line of ordinary high-water mark on nontidal water navigable in fact, within the jurisdiction of the United States, shall be subject to exploration and mining for gold and other precious metals by citizens of the United States, or persons who have legally declared their intentions to become such, under such reasonable rules and regulations as the miners in organized mining district may have heretofore made or may hereafter make governing the temporary possession thereof for exploration and mining purposes until otherwise provided by law: Provided further, That the rules and regulations established by the miners shall not be in conflict with the mining laws of the United States; and no exclusive permit shall be granted by the Secretary of the Interior authorizing any person or persons, corporation, or company to excavate or mine under any of said waters, and if such exclusive permit has been granted it is hereby revoked and declared null and void.

The rules and regulations prescribed by the Secretary of the Interior under this section shall not, however, deprive miners on the beach of the right hereby given to dump tailings into or pump from the sea opposite their claims, except where such dumping would actually obstruct navigation or impair the fisheries, and the reservation of a roadway sixty feet wide under 462 of this Title shall not apply to mineral lands or townsites. No person shall acquire by virtue of this section any title to any land below the line of ordinary high tide or the line of ordinary high-water mark, as the case may be, of the waters described in this section. Any rights or privileges acquired hereunder with respect to mining operations in land, title to which is transferred to a future State upon its admission to the Union and which is situated within its boundaries, shall be terminable by such State, and the said mining operations shall be subject to the laws of such State.

"Sec. 2. Nothing in this Act shall be deemed to affect or impair any valid claims, rights or privileges, including possessory claims under the first proviso of section 8 of the Act of May 17, 1884 (23 Stat. 26), arising under any other provision of law."

Plaintiff attaches to his reply affidavit a copy of minutes of a miner's meeting held at Council, Alaska, on the Niukluk River, on June 29, 1948, containing rules and regulations adopted thereat, but limited by their terms to the Niukluk River, as follows:

"Rule 1. Owner, or owners, of valid placer locations, embracing within its boundaries any portion of the bed of a navigable stream shall have the exclusive right to prospect and mine said portion of the bed of a navigable stream so long as such valid mining locations are maintained in effect under the laws of the United States, or the Territory of Alaska."

"Rule 2. The owner, or owners, of valid placer mining locations abutting ordinary high water on the banks of navigable rivers shall have the exclusive right to prospect and mine the beds of navigable streams abutting such placer mining locations from mean high water to the center or thread of the stream at summer low water, so long as such mining locations remain in effect under the laws of the United States or the Territory of Alaska."

"Rule 3. The rights of exclusive possession for the purpose of prospecting and mining in these rules and regulations provided are for the temporary use of the beds of navigable streams, shall not confer any property right, and apply with equal force and effect to all valid mining locations heretofore made and all those hereafter made."

■ The Court will take judicial notice of the fact that for many years past the Cape Nome Recording Precinct, including within its boundaries the claims of the plaintiff and all of the Niukluk River, has been established under law as a recording district with a recorder whose duty it is to receive and record records pertaining to mining locations and other rights, including water rights, and that the practice of establishing mining districts in Alaska and the holding of miners' meetings for the purpose of establishing mining districts and the adoption by the miners of rules and regulations governing matters long since provided for by law, have been discontinued. Congress knew of the establishment of our Territorial Legislature and undoubtedly knew that the Legislature was empowered to enact statutes governing the mining of placer claims in matters not in conflict with the powers of Congress over the public domain.

■ The rules and regulations show that the plaintiff who claims the right by reason of his placer locations "on and across" the Niukluk River, to mine the bed of that stream, was chairman of the miners' meeting. The pleadings further show that he has known of the operations of the defendant corporation since September 15, 1947. The record fails to show that he has filed with the Secretary of Interior the notice of intention to prospect or mine the bed of the stream. The plaintiff may even at this date go upon the Niukluk River and prospect and mine its bed by complying with the rules and regulations of the Secretary of the Interior, since by the Act's terms, the Secretary is prohibited from granting an ex-

clusive right to any person to mine the beds of navigable waters.

■ The beds of streams navigable in fact have never been considered as public lands. They were not granted by the Constitution to the United States, but are held in trust for the future state. They cannot be acquired as part of placer mining claims, since such claims extend only to the ordinary high-water mark of the stream. Lindley on Mines, 3d Ed., Section 428.

■ The plaintiff in this case asserts that because his five claims are "on or across" the Niukluk River, he has an exclusive right to prospect and mine the portion of the bed of that stream which lies within his claims. Certainly before the passage of the Act of August 8, 1947 above set forth, he had no such right.

As stated in Columbia Canning Company v. Hampton, 9 Cir., 161 F. 60, 64, " * * * that while the owner or locator of lands in Alaska which border upon navigable or tidal waters has, under the general law, the right of access to such waters for the purpose of navigation, he can acquire no right or title in the soil below high-water mark, and he can have therefore no right of possession upon which he can base an action against an intruder whom he charges with interfering with and obstructing him in the erection and use of a structure upon the shore below such high-water mark."

Does the Act of August 8, 1947 give him the exclusive right to prospect for and mine gold in the bed of the navigable stream which his claims cross?

A reading of the Act will disclose that it was the intent of Congress to provide no exclusive right to the lands under navigable waters. The conditions under which mining for gold or other precious metals may be taken apply to all citizens and those who have legally declared their intention to become such, subject, however, to the laws enacted by Congress for the protection and preservation of navigable waters, the fisheries, and under rules and regulations by the Secretary of the Interior, for the preservation of order and the prevention of injuries to the fisheries.

The Act in Section 2 provides: "Sec. 2. Nothing in this Act shall be deemed to af-

fect or impair any valid claims, rights or privileges, including possessory claims under the first proviso of section 8 of the Act of May 17, 1884 (23 Stat. 26), arising under any other provision of law."

It is argued by plaintiff that this Section secures to plaintiff the right to prospect and mine the bed of the Niukluk River below the line of ordinary high-water mark on those claims which are "on and across" that river. It is clear that prior to the passage of the Act of August 8, 1947, plaintiff had no right or claim to the bed of that river, it being navigable in fact. Section 2 protects only valid claims, rights and privileges existing before and at the time of the passage of the Act. Since plaintiff and his predecessors in interest had been foreclosed from claiming any such claim, right or privilege in the bed of that stream, he cannot now invoke Section 2 to bring into existence that which he had never had.

■ A careful study of the pleadings and affidavits fails to convince the Court that the plaintiff has such a clear right as to entitle him to injunctive relief. He must depend upon the strength of his own title, and not on the weakness of that of his opponent. Any valid claim, right or privilege which he had and now has is limited to that portion of his placer locations which are a part of the public domain. He has failed to show, either in his pleadings or affidavits that he has complied with the rules and regulations of the Secretary of the Interior which provide (Circular 1667, U. S. Dept. of Int. Bureau of Land Management, Title 43—Section 69.12 to 69.18, promulgated November 26, 1947): "Any citizen of the United States, any person who has legally declared his intention to become such, any association of such citizen, or any corporation organized under the laws of the United States or of any State or Territory thereof, shall, before commencing actual operations, file a notice of intention to mine or dredge for gold and other precious metals in any of the land described in the preceding section. This notice must be filed in triplicate in the nearest District Land Office, and should contain (a) the full name, address and citizenship of the person filing the notice; (b) a description of the place where the

dredge will be initially located or the mining operations otherwise commenced, such place to be connected where practicable by course and distance to a corner of the public land survey on the shore, or if there are no surveyed lands in the vicinity, with the nearest, readily-ascertainable geographical or topographical point; (c) a statement that actual dredging or mining operations will be commenced no later than 90 days after the date of the filing of the notice, and (d) a statement that the dredging or other mining operations will comply with all pertinent regulations and laws."

The injunction pendente lite will be denied.