**DENT v. ALASKA PLACER CO.**

No. 12069.

United States Court of Appeals
Ninth Circuit.

Oct. 4, 1949.

Collins & Clasby, Charles J. Clasby, Fairbanks, Alaska, for appellant.

Mable Walker Willebrandt, Los Angeles, Cal., for appellee.

Before HEALY, BONE, and ORR, Circuit Judges.

HEALY, Circuit Judge.

This appeal is from an order denying an injunction pendente lite in an ejectment suit. The complaint in the action alleges ownership in appellant of six placer claims located in the bed of the Niukluk river in the Nome mining district, Alaska, and asserts that appellee is wrongfully dredging the gold therefrom. The restraining order was sought to halt dredging and consequent exhaustion of values which would ensue pending disposition on the merits.

The facts pertaining to the dispute are such as appear from the showings for and against the issuance of the injunction. The claims were located by appellant's grantors during the period 1933 to 1938. In 1941, in a suit by the United States against a number of parties asserting mineral rights in the stream bed (including appellee and the grantors of appellant) it was decreed that on the reaches of the river where the claims lie the Niukluk is a part of the navigable waters of the Territory and that the United States is the holder of all the right, title, and interest in and to the bed of the stream below the line of ordinary high water. The judgment debarred the defendants from mining or removing precious minerals therefrom, and declared that as riparian owners of mineral claims they have no right or interest in the soil or the values therein below ordinary high water.[1] Subsequent to the rendition of this judgment, and with knowledge of it, appellant obtained from the claimants what purported to be a warranty deed to the claims described in his complaint.

It is necessary now to go back a little and review the history of certain legislation bearing on the present controversy. By § 26 of the act of June 6, 1900, 31 Stat. 321, 48 U.S.C.A. § 381, Congress extended to Alaska the laws of the United States relating to mining claims, mineral locations, and rights incident thereto. This section contained a proviso opening to exploration and mining for precious metals all land and shoal waters between low and mean high tide on the shores and inlets of Bering Sea under reasonable rules of miners. It also authorized dredging below low tide subject to regulations of the Secretary of War. By the amendatory act of May 31, 1938, 52 Stat. 588, this privilege was extended generally to all tidal waters on the Alaskan coast, the regulatory power of the War Department being transferred to the Secretary of the Interior. By act of August 8, 1947, 61 Stat. 916, Congress further amended § 26 to extend the right or privilege to all land in the Territory below the line of ordinary high-water mark on nontidal waters navigable in fact. The act is copied on the margin.[2]

1. This judgment was entered in Civil Case No. 3473, in a suit entitled United States of America v. Joseph E. Lucas et al., in the District Court of the United States for the Second Judicial Division of Alaska. No appeal appears to have been taken from it, and the judgment became final.

2. "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 26, title I, chapter 1, of the Act entitled 'An Act making further provision for a civil government for Alaska, and for other purposes', approved June 6, 1900, 31 Stat. 321, as amended by the Act of May 31, 1938, 52 Stat. 588, is further amended to read as follows:

" 'Sec. 26. The laws of the United States relating to mining claims, mineral locations, and rights incident thereto are hereby extended to the Territory of Alaska: Provided, That, subject only to the laws enacted by Congress for the protection and preservation of the navigable waters of the United States, and to the laws for the protection of fisheries, and subject also to such general rules and regulations as the Secretary of the Interior may prescribe for the preservation of order and the prevention of injury to the fisheries, all land below the line of ordinary high tide on tidal waters and all land below the line of ordinary high-water mark on nontidal water navigable in fact, within the jurisdiction of the United States, shall be subject to exploration and mining for gold and

On November 26, 1947, the Secretary of the Interior promulgated amendatory regulations appropriate to the further extension of the privilege and to the statutory enlargement of his own authority. The declared purpose of the Secretary was to set forth the conditions under which, pursuant to the act of August 8, 1947, exploration and mining may be conducted below ordinary high tide on tidal waters and below ordinary high-water mark on nontidal waters navigable in fact.[3] Among other things the regulations provide that any citizen or corporation shall, before commencing actual operations, file with the Department a notice of intention to mine or dredge, the notice to give certain specified information. In order to insure the preservation of order and the avoidance of conflict they provide that each dredge operating shall not be interfered with by other dredging or mining operations within an area of 200 feet in the direction of either bank and within a space of 500 feet up or down the stream.

Shortly after passage of the 1947 act appellee appears to have transmitted to the Department of the Interior a notice of its intention to conduct operations in this portion of the Niukluk,[4] and it obtained at that time a permit from the Department of the Army. Later that fall it floated its dredge down the Niukluk to the site of the placer locations claimed by appellant, and upon the opening of the 1948 season it commenced and thereafter continued dredging operations in the bed of the stream. On June 29, 1948, a meeting of local miners, presided over by appellant, adopted rules purporting to confer on owners of "valid placer locations" the "exclusive" right to prospect and mine any portion of the bed of a navigable stream embraced within the boundaries of their locations, and further conferring on owners of abutting locations on the banks of navigable rivers exclusive rights to

other precious metals by citizens of the United States, or persons who have legally declared their intentions to become such, under such reasonable rules and regulations as the miners in organized mining districts may have heretofore made or may hereafter make governing the temporary possession thereof for exploration and mining purposes until otherwise provided by law: Provided further, That the rules and regulations established by the miners shall not be in conflict with the mining laws of the United States; and no exclusive permit shall be granted by the Secretary of the Interior authorizing any person or persons, corporation, or company to excavate or mine under any of said waters, and if such exclusive permit has been granted it is hereby revoked and declared null and void. The rules and regulations prescribed by the Secretary of the Interior under this section shall not, however, deprive miners on the beach of the right hereby given to dump tailings into or pump from the sea opposite their claims, except where such dumping would actually obstruct navigation or impair the fisheries, and the reservation of a roadway sixty feet wide under the tenth section of the Act of May 14, 1898, entitled "An Act extending the homestead laws and providing for right-of-way for railroads in the District of Alaska, and for other purposes", shall not apply to min-

eral lands or town sites. No person shall acquire by virtue of this section any title to any land below the line of ordinary high tide or the line of ordinary high-water mark, as the case may be, of the waters described in this section. Any rights or privileges acquired hereunder with respect to mining operations in land, title to which is transferred to a future State upon its admission to the Union and which is situated within its boundaries, shall be terminable by such State, and the said mining operations shall be subject to the laws of such State.'

"Sec. 2. Nothing in this Act shall be deemed to affect or impair any valid claims, rights or privileges, including possessory claims under the first proviso of section 8 of the Act of May 17, 1884 (23 Stat. 26), arising under any other provision of law." 48 U.S.C.A. § 381.

3. Circular No. 1667, Department of the Interior, Code of Federal Regulations, Title 43. For the regulations issued under the 1938 act see Circular No. 1454, General Land Office, Feb. 17, 1939.

4. In submitting the notice appellee apparently was guided by the earlier departmental circular of Feb. 17, 1939, mentioned in footnote 3 above. The departmental policy was to accept such notices without waiting for the formal issuance of new regulations.

prospect and mine to the thread of the stream.[5] Soon afterwards appellant commenced this suit.

It was plainly not intended by the act of August 8, 1947 to open the beds of navigable rivers to mineral location, or to validate locations previously made, as here, under supposed authority of the general mining laws. Admittedly the mining laws have application only to the public lands subject to private acquisition; and, as seen, it has been judicially determined that the bed of the Nuikluk is not in that category. Tidelands and the beds of navigable streams in the territories acquired by the United States have never been subject to mineral location, it being the traditional policy of the government to regard them as held in trust for the ultimate benefit of future states, Shively v. Bowlby, 152 U.S. 1, 58, 14 S.Ct. 548, 38 L.Ed. 331; United States v. Holt State Bank, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465; and there is nothing in the act in question suggesting a departure from this policy.

We do not understand that appellant takes issue with these views. His argument is that Congress intended to grant to all persons presently in possession an exclusive if temporary right to possession of the beds of navigable streams, subject only to such rules and regulations as the miners in organized mining districts may make. The argument is predicated on the statutory passage relating to miners' rules, and on § 2 of the act providing that "Nothing in this Act shall be deemed to affect or impair any valid claims, rights or privileges, including possessory claims under the first proviso of section 8 of the Act of May 17, 1884 (23 Stat. 26), arising under any other provision of law." 48 U.S.C.A. § 381 note.

Appellant has no valid claim, right or privilege "arising under any other provision of law", unless it be under the first proviso of § 8 of the 1884 act[6]; and it is plain that the placer locations relied on (the earliest of which was made in 1933) do not fall within the terms or spirit of that proviso, which states merely that "the Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or *now* claimed by them but the terms under which such persons may acquire title to such lands is reserved for future legislation by Congress." [Emphasis supplied.] The right of miners in organized districts to make reasonable rules and regulations is, of course, another matter; but miners are without authority by rule to expand or enlarge a right or privilege granted by Congress, or to create rights not granted. The miners' rules adopted in this instance, to the extent that they purport to confer on locators or abutting owners exclusive mineral rights in the beds of navigable streams, are in obvious conflict with the 1947 act.[7] That statute suggests the thought of an exclusive right only for the purpose of rejecting it.[8]

It is implicit in the regulations of the Secretary of the Interior that, subject to observance of departmental rules designed to preserve order and prevent clashes among competing miners, the privilege of mining shall be open to all on the basis of first come first served. None may exclude others except from ground actually being worked. While appellant does not in terms attack the validity of these regulations, he appears to contend that the Secretary's authority extends merely to the protection of fisheries, leaving the conditions under

5. The circumstances under which this meeting was called and conducted are such as to render suspect the integrity of the action taken at it. However, for reasons which will appear we have not thought it necessary to consider the regularity of the meeting.

6. The act of May 17, 1884, 23 Stat. 24, referred to in the statute, is one providing a civil government for Alaska.

7. Cf. Thompson v. Pelton, 4 Alaska 510, rejecting the claim of the owner of an abutting location to exclusive mineral rights in the beach to the line of low tide.

8. Cf. the provision that "no exclusive permit shall be granted by the Secretary of the Interior authorizing any person or persons, corporation, or company to excavate or mine under any of said waters, and if such exclusive permit has been granted it is hereby revoked and declared null and void."

which mining operations may be carried on to be determined by miners' rules. We are unable to agree. A study of the legislation in its entirety, and a comparison of its provisions with those of the preceding acts, leaves no doubt that Congress intended to confer on the Secretary plenary authority to administer the act in all its phases. The passage relating to miners' rules is old. It would seem to have been retained for what it might be worth considering the new dispensation. Perhaps there is still room for miners to legislate within the framework of the departmental regulations, but in the main the passage evidences little other than an archaic carryover from a more primitive day.

■ There is no showing that appellant was conducting operations in the bed of the Niukluk, nor does he appear to have been in actual possession of any of the ground embraced within the lines of the placer locations. Subject to compliance with the departmental regulations, he has the same right as others to enter and mine; and from this right he has not been excluded.

Order affirmed.