Floyd Burke GILLESPIE, Plaintiff,

v.

John WINDUST, Carl E. Oaks, John Doe, Richard Roe, Henry Poe, Mary Green, and Mary Moe, Defendants.

Civ. No. A-7723.

District Court, Alaska
Third Division, Anchorage.

Aug. 24, 1956.

John Manders, Anchorage, Alaska, and Maurice Johnson, Fairbanks, Alaska, for plaintiff.

Cremo & LaFollette, Anchorage, Alaska, for defendant Windust.

McCARREY, District Judge.

This matter comes before the court upon a motion to set aside the verdict which awarded the plaintiff possession of certain property here in dispute, but which does not allow any damages for loss of

rents and profits. A motion for a directed verdict, under rule 50, Federal Rules of Civil Procedure, 28 U.S.C.A., was made at the close of plaintiff's evidence, which motion was denied.

This action arose in ejectment wherein the plaintiff sought to recover possession of certain real property from which he alleges the defendant, John Windust, had dispossessed him. The property in question is located approximately 180 miles south of Fairbanks, Alaska, on the west side of the Richardson Highway, and is situated opposite the roadhouse known as "Paxon's Lodge". For orientation, a sketch of the land directly in controversy, together with the structures and facilities thereon, is set forth, by reason of clerical necessity, in the outline on page two, which is reconstructed from defendant's exhibit "C".

The plaintiff alleges that he and his grantors were the owners by right of prior occupancy and right of possession, of property which he describes in the complaint as follows:

"From initial stake Number One, located west of the Richardson Highway and adjacent to the north fork of the Gulkana River, 450 feet in a southerly direction to stake Number Two; thence in an easterly direction 450 feet to stake Number Three; thence in a northerly direction 450 feet to stake Number Four; thence in a westerly direction 450 feet to stake Number One, or stake of beginning."

COPY OF ORIGINAL SKETCH MADE BY DR. GILLESPIE

GOLKANA RIVER

Plaintiff then alleges that the defendants, without right or title so to do, entered upon said land and ejected him therefrom, and now unlawfully withhold the possession thereof from plaintiff. After alleging the loss of rents and profits from the land, which he states to be in the sum of $18,000, he then prays that judgment be entered against the defendants for that amount and " * * * for the restitution of possession of said land and premises to him * * *" The action was dismissed as to Carl E. Oaks, and since the other-named fictitious defendants were never served, John Windust is the sole remaining defendant.

In defendant's amended answer John Windust denies each and every allegation. By way of an affirmative defense, he alleges that if he is in possession of any part of the land described in plaintiff's complaint, " * * * that he is the owner of such part by virtue of his present possession thereof". He further alleges " * * * that he is in possession of a strip of land, uniform in width, running north and south, and bounded on the west by a line just west of certain gasoline storage tanks of several thousand gallons capacity, situate generally at the place described in plaintiff's complaint".

The evidence adduced was that the plaintiff originally came to the Territory of Alaska in 1919 as a doctor, for the Kennecott Copper Company, and made his first trip to the area, and upon a portion of the land here in dispute, in the year 1922, for the purpose of hunting. Between that date and 1932, at which time he moved to Fairbanks, he usually made at least one trip into that area yearly. In 1932 he constructed a small "McKinley Park" type tent upon a portion of this property and built a road from the Richardson Highway into his cabin. Thereafter he spent considerable periods of time on the property during the summers, fishing and hunting in that area. In 1939 he tore town the "McKinley Park" tent and built a modern celotex winterized cabin, 12 feet by 24 feet, with a screen porch, 10 feet by 12 feet, and a

shed. A copy of the original sketch made by the plaintiff, Dr. Gillespie, and marked defendant's exhibit "C", as shown on page two, *supra,* is a rough schematic sketch of the location of the various buildings of the litigants, including the area of land here in controversy.

In 1942 the plaintiff retired as an actively practicing doctor and, with his wife, lived in the cabin each summer for the next five years. On August 20, 1950, the plaintiff filed "Notice of Location of Settlement or Occupancy" and an application to purchase a homesite, pursuant to the Act of May 14, 1898, 30 Stat. 413, as amended, 48 U.S.C.A. § 359. The application contained the following description:

"From initial stake number one, located west of the Richardson Highway and adjacent to the north fork of the Gulkana River, four hundred and fifty feet in a southerly direction to stake number two, thence in an easterly direction four hundred and fifty feet to stake number three; thence in a northerly direction four-hundred and fifty feet to stake number four; thence in a westerly direction four-hundred and fifty feet to stake number one, or stake of beginning. This homesite location is located approximately one-hundred and eighty miles south of Fairbanks, Alaska, adjacent to Richardson Highway."

He testified that it was his intent to stake the property commencing with the west boundary of the highway, five acres in total, 450 feet square. The west boundary of the highway was never definitely established during the trial. There is considerable confusion on this point since P.L.O. 601, August 11, 1949, and the later Act of April 29, 1950, 48 U.S.C.A. § 461a (which reserved lands for highway purposes) never appeared to be understood by the litigants nor was it explained to the jury. Consequently, the exact west boundary of the highway, and the point where the plaintiff intended to commence his measurements, were never definitely established. No direct action

was taken upon the application by the Land Office at that time, and thereafter, on the 15th day of May 1952, this suit was filed by the plaintiff.

On the east side of the highway, at a point in juxtaposition to the land here in question, was located a roadhouse known as "Paxon's Lodge", *supra,* and accompanying facilities, which had exchanged hands from the year 1916 up to 1945, at which time the defendant, John Windust, purchased it from Russell Keith by way of some type of quitclaim deed never admitted in evidence.

Witnesses called for the defendant testified that throughout the years there had been some structures on the west side of the highway, i. e. dog houses, etc., and upon a portion of the property here in question. With the passing of time, these were all removed through deterioration, or otherwise, until 1938, at which time Russell Keith (the prior owner, *supra)* built a story and a half staff house, 18 feet by 24 feet, upon a portion of the property now claimed by the plaintiff. There is further testimony that in 1945 the defendant built some other buildings on a portion of the land here in question, and in the year 1952 he installed two gas pumps and three large gas tanks. Thereafter, other outbuildings and facilities were installed which defendant Windust testified now have a value of some $40,000.

On May 31, 1950, the defendant, John Windust, made an application for a trade and manufacturing site, pursuant to section 10 of the Act of May 14, 1898, 30 Stat. 413, as amended, 48 U.S.C.A. § 359, and submitted a plat of the tract applied for, which is described as follows:

"Mile post 188 north of Valdez on Richardson Highway starting at Post No. 1 in NE corner of plat thence in a Westerly direction to stake No. 2—1000 ft. to stake No. 3 in a southerly direction 1400 ft. thence in easterly direction to stake No. 4—1000 ft. thence in a northerly direction to stake of beginning 1400 ft."

This application and description included a portion of the land now claimed by the plaintiff. The application further stated that the defendant had been occupying this tract since January 1945 and that he had placed certain improvements upon a portion thereof. The evidence further disclosed that the defendant had applied on October 28, 1947, for another trade and manufacturing site, which included a larger portion of land than the 1950 application and also the land here in dispute. Neither of these applications was determined up to the date of trial.

The plaintiff admitted that he did not protest the installation of any of the buildings and/or facilities made by the defendant or his predecessors in interest, giving as his reason that it is the unwritten law here in Alaska to try to get along with your neighbors. Plaintiff testified that in the summer of 1950 he talked to the defendant concerning his five acres and stated that the defendant then agreed to let him have them. This the defendant denies.

There was testimony that since the filing of the suit, certain signs were posted by the plaintiff which were immediately destroyed by someone never identified. The evidence was clear that the plaintiff never built a fence, nor did he do any other act or thing to reduce the property herein claimed to his actual possession, other than the staking, the building of a road and tent house, and the other improvements made to the celotex house in 1939, *supra.*

■ Rule 50(b), Federal Rules of Civil Procedure, provides that when a motion for a judgment notwithstanding the verdict is filed, the court is impelled to consider the legal question considered on the original motion for a directed verdict. A directed verdict will only be granted by the court when there is no evidence which, if believed, would authorize a verdict against the movant. Audirsch v. Texas & Pacific R. Co., 5 Cir., 1952, 195 F.2d 629.

■■ To grant a directed verdict the court must determine that there is a lack of probative facts capable of supporting,

with reason, the conclusion expressed in the verdict, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it. Reuter v. Eastern Air Lines, 5 Cir., 1955, 226 F.2d 443, 445. In a case of this nature, it is necessary that the court find that the plaintiff has failed to establish possession as a matter of law, that there are no facts from which reasonable men could perceive an intent to establish dominion over the land in question, or that reasonable men could not fail to discern acts of the plaintiff establishing some basis which will prevent him from asserting possession.

■■ I am of the opinion that neither party has established legal title to the property in question. The evidence discloses that a part of the property, and particularly the strip here in question, may be within the land withdrawn from the public domain as a right-of-way for the Richardson Highway by P.L.O. 601, August 11, 1949. Plaintiff has failed to illustrate any compliance with the provisions of law pertaining to titular rights in land withdrawn by the order. In the absence of specific statutory provisions to the contrary, the ultimate question of title is not determinable in an ejectment action. 18 Am.Jur. 8, sec. 2; 28 C.J.S., Ejectment, § 4, p. 850; Hardy v. Johnson, 1863, 1 Wall. 371, 68 U.S. 371, 373, 17 L.Ed. 502; Barcroft v. Livacich, 1939, 35 Cal.App.2d 710, 96 P.2d 951, 955. Thus we are concerned with the question of who has the superior right to possession in the premises as between the parties.

■■ Continuous prior possession is a sufficient estate in this jurisdiction to warrant an ejectment action against an intruder. Campbell v. Silver Bow Basin Mining Co., 9 Cir., 1892, 49 F. 47; Arness v. Petersburg Packing Co., 9 Cir., 1919, 260 F. 710; Ringstad v. Grannis, 9 Cir., 1947, 159 F.2d 289. The Arness case, in particular, establishes the right to ejectment when title is in the United States. Possession sufficient to establish a basis for this action must be open, no-

torious, and continuous, subjecting the property to the dominion of the plaintiff in a practical and substantial use. Gordon v. Ross-Higgins Co., 9 Cir., 1908, 162 F. 637; Patterson v. Hamilton, 9 Cir., 1921, 274 F. 363. The jury was instructed in relation to these requirements.

■■ It is established in this jurisdiction that recovery in an ejectment action must be based on the strength of the plaintiff's title or right to possession, and not on the weakness of the defendant's interest. Forno v. Coyle, 9 Cir., 1935, 75 F.2d 692; Dent v. Alaska Placer Co., D.C.Alaska, 2nd Div., 1948, 79 F. Supp. 575, affirmed 9 Cir., 1949, 177 F.2d 8. To justify a verdict in his behalf, the plaintiff must prove the elements of possession with sufficient factual showing to enable reasonable men to concur in his position.

■■ The general law, in accord with the Alaska decisions, is that it is not necessary that the claimant cultivate the land, or that he establish enclosures on the land, or even that he establish boundary monuments, but it is necessary that he subject the land to some use which will advise others of his intent to hold dominion over the property in question to the exclusion of all others. 18 Am.Jur. 39, sec. 38; 28 C.J.S., Ejectment, § 98, p. 989; Patterson v. Hamilton, supra. The language of the Patterson case is helpful in this regard [274 F. 365]:

"* * * possession is the actual exercise by a claimant of the present power to deal with the property and to exclude others from meddling with it, * * * it implies a subjection to the will and dominion of the claimant, and is *evidenced by occupation or by appropriation*, and *by making a use of the land in the ordinary way*, or by making any use for which it is suitable, and * * * the indicia of possession must be evidenced, either by a visible inclosure and use of the land claimed, or by the construction of building or buildings, pier, mole or jetty, or by making or placing some other useful

structure thereon, or some permanent thing of value sufficient *to show the good faith of the claimant."* (Emphasis supplied.)

The objective test for the determination of possession in these matters is substantially similar to that for the determination of adverse possession. 28 C.J.S., Ejectment, § 98, p. 989; Bass v. Ramos, 1909, 58 Fla. 161, 50 So. 945; Gordon v. Ross-Higgins Co., supra. The same considerations to reach a just conclusion apply in either case, that is, the claimant should advise other prospective entrants of his intent. He should, so to speak, exercise such intent as to exclude the world from the property. In the case now before me, the jury had little but the subjective intent of the plaintiff upon which to base its verdict. This is not enough.

 I am unable to find in the evidence produced before this court any proof of the quality necessary to establish a basis for the jury to find an interest entitled to the protection of the law. The plaintiff neither subjected the land to a use which would advise the defendant and his predecessors in interest of plaintiff's intent to hold dominion over the property in question, nor did he otherwise establish indicia of possession sufficient to give him a right to ejectment. He would, of course, have such a right as to the area where he had constructed a habitation and built the road, but he does not claim to have been ousted in these areas.

 It is an established principle of law, applicable in this jurisdiction, that one who knowingly and silently permits another to expend money on land under a belief that he has the right to possession of that land will not be permitted to set up his interest to the exclusion of the rights of the holder making the improvements. Dickerson v. Colgrove, 1879, 100 U.S. 578, 25 L.Ed. 618; Kirk v. Hamilton, 1880, 102 U.S. 68, 26 L.Ed. 79; James v. Nelson, 9 Cir., 1937, 90 F.2d 910, certiorari denied 1937, 302 U.S. 721, 58 S.Ct. 41, 82 L.Ed. 556; Devine v. Cordovado, D.C.Alaska, 2nd Div.,

1954, 15 Alaska 232; Skyles v. Kincaid, 1928, 124 Or. 443, 264 P. 432; Burrow v. Carley, 1930, 210 Cal. 95, 290 P. 577; Annotation, 1932, 76 A.L.R. 304. This doctrine, known as equitable estoppel or estoppel in pais, is certainly applicable to this case. Here the evidence, viewed in the light most favorable to the plaintiff, reveals that the plaintiff stood by and allowed the defendant and his predecessors in interest to build improvements upon the property as early as 1939, and according to plaintiff's own testimony, he made no protest to defendant when he constructed facilities now in question valued in the area of forty thousand dollars.

 The rule as pronounced by the Supreme Court in Dickerson v. Colgrove, supra, is:

"He who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted."

The plaintiff testified that it was the code of the Alaskan at that time to attempt to maintain compatible relations with his neighbors, and that he was loath to assert any interest against the defendant when he entered upon the property. While the attitude is commendable in the interest of social tranquility, it is in opposition with the settled law of property. Plaintiff had a positive duty to assert any interest he might have if he wished to preserve any right he had in the land. Assuming the jury were able to find that the plaintiff had possession, I am of the opinion that he would be estopped from asserting such possession under the doctrine of equitable estoppel.

There is authority to the effect that an action for ejectment must fail where the complaint or verdict fails to give a description of the property sufficient for the executing officer to adequately administer the order of ejectment. Dodd v. Madaris, 1950, 206 Ga. 497, 57 S.E.2d 597. In the Dodd case, as in the case at issue, the complaint's description turned upon the placement of a certain stake in

relation to a road. There the court dismissed the action. This factor further *illustrates the weakness of plaintiff's position,* but it is unnecessary for this court to determine whether it alone would be sufficient ground to set aside the verdict.

I feel, in reviewing the case as a whole, that the plaintiff has failed to establish a prima facie case in ejectment. Based on this conclusion, and further, on the law of equitable estoppel, the motion to set aside the verdict should be and the same hereby is, granted.