Argued December 13, 1956, reargued September 25, reversed
November 27, 1957

## In the Matter of the Guardianship of
## Doris Eileen Fox

## FOX et ux v. LASLEY
318 P. 2d 933

*Jay E. Jordan*, Spokane, Washington, argued the cause for appellants. With him on the brief were Hickson and Dent, Portland.

*Roscoe C. Nelson*, Portland, argued the cause and filed a brief for respondent.

McALLISTER, J.

This is an appeal by Bert M. Fox and Doris Elene Fox, his wife, from a decree of the circuit court for Multnomah county denying their petition for the removal of the respondent, Dorothea Lasley, as guardian of the person of their minor child, Doris Eileen Fox, and for the termination of said guardianship. The child, who is referred to in the record both as Doris Eileen and Doris Irene, will be referred to herein simply as "Doris" and her mother as "Mrs. Fox."

During the period material to this case, Bert M. Fox and his wife have lived in Crescent City, California with their family, which, in February, 1952, consisted of six children, including Doris who was then about 2 months old. During February, 1952, one of the older children was severly burned by accident and after the child had been hospitalized in Crescent City for about two weeks, the mother took the injured child to San Francisco. Fox, who was left at home to care for the other five children, asked his wife's sister, a Mrs. Richards, who lived in Vancouver, Washington, and other relatives for help. In response to the call for help, Mrs. Richards went to Crescent City accompanied by Mrs. Fox's stepmother, Mrs. Lillie M. Quinn, who also lived in Vancouver, and Mrs. Fox's stepsister, Mrs. Cecil Austin, who lived in Junction City, Oregon. Three of the Fox children were taken by the

relatives to be cared for during the emergency. One child, Helen, was taken by Mrs. Austin, the second child, Edward, was taken by Mrs. Quinn and Doris was taken by Mrs. Richards to her home in Vancouver. After about six weeks, Mrs. Richards, who had several children of her own, arranged to have Doris cared for by the respondent, Dorothea Lasley, who took the child to the Lasley home in Portland.

About two months after the children had been taken by the relatives, Mrs. Quinn returned Edward to Crescent City. A short time later Mr. and Mrs. Fox came to Oregon, reclaimed the other two children and took them back to the Fox home in Crescent City. A few weeks later, Mrs. Lasley and Mrs. Austin went to Crescent City in an effort to have the two Fox children, Helen and Doris, given again into their care. While in Crescent City on this trip, the two women conferred with Howard J. Benner, who was the probation officer for Del Norte county, of which Crescent City is the county seat. Mr. Benner was acquainted with the Fox family, having investigated on a previous occasion the care being given the children by Mr. Fox.

After a conference with Mr. Benner, the Foxes agreed to again give custody of Doris to Mrs. Lasley and custody of Helen to Mrs. Austin. The two women left Crescent City with the children on or about May 7, 1952 and returned to Oregon. On the following day Mr. Benner mailed to Mrs. Lasley at her home in Portland a document entitled Relinquishment for Guardianship, the material portion of which reads as follows:

"KNOW ALL MEN BY THESE PRESENTS:
"THAT WE, BERT FOX and DORIS EILENE FOX, natural parents of DORIS IRENE FOX, hereby place said child in the custody of DORO-

THEA LASLEY and consent that any Court of competent jurisdiction may appoint EDWIN LASLEY and DOROTHEA LASLEY, or either of them, guardians or guardian of the person of said minor child.

"s/ Bert M. Fox

"s/ Doris E. Fox "

The above document had been prepared at Benner's request by the District Attorney for Del Norte county and was executed by Mr. and Mrs. Fox after some persuasion on the part of Benner.

Apparently the parties did not have a clear understanding as to the duration of Mrs. Lasley's custody of Doris. It is certain, however, that the Foxes did not intend to give up custody of Doris permanently or irrevocably and that Mrs. Lasley was well aware of that fact. On March 29, 1952, while Doris was being cared for by Mrs. Richards in Vancouver, Washington, Mrs. Lasley's attorney wrote to Mr. Benner at Crescent City inquiring whether the child could be adopted and submitting Mrs. Lasley's application to adopt the child. Mr. Benner replied to this letter on April 1, 1952, and stated in substance that he had made some investigation and did not intend to interfere with the custody of the Fox children by their parents.

The letter written to the Lasleys by Mr. Benner on May 8, 1952, forwarding the Relinquishment for Guardianship indicated clearly a continuing interest in the child by both Mr. Benner and the parents. Mrs. Lasley was requested to make a periodic report on the welfare of the child so that Mr. Benner could in turn report to the parents. At the hearing on the

petition for her removal as guardian, Mrs. Lasley testified that while she was in Crescent City she was told by Mr. Benner that Doris could not be adopted.

On June 14, 1952, Mrs. Lasley filed a petition in the circuit court for Multnomah county praying for her appointment as guardian of the person of Doris. The Relinquishment for Guardianship was attached as an exhibit to the petition but no citation of any kind was served on either of the parents. On the same day that the petition was filed an order was entered by the circuit court appointing Mrs. Lasley as the guardian of the person of Doris.

In about five or six months after Mrs. Lasley was appointed guardian, the parents requested that Doris be returned to them and when such request was refused, filed their petition in the circuit court praying that the guardianship be terminated and that the custody of their child be restored to them. After a hearing, the court found that Mrs. Lasley had been duly appointed guardian of the person of Doris, had given said child a good home and proper care and had properly discharged her duties as such guardian. The court further found that the Foxes were morally unfit to have custody of their child. Based upon such findings, the court entered an order denying the petition to terminate the guardianship and ordering that the child should remain in the custody of the guardian.

■ We must first decide whether an Oregon court had jurisdiction to appoint a guardian of the person of a minor whose domicile was then in California. That the domicile of the child at all times was in California is hardly open to question. Every child is assigned a domicile at birth which, if the child is legitimate, is usually the domicile of the father. Restatement, Conflict of Laws 30, § 14. With a few exceptions

not material in this case, a child during its entire minority has the same domicile as that of its father. Restatement, Conflict of Laws 55, § 30. This court has approved and adopted these general rules for determining the domicile of a minor in the recent case of *Lorenz v. Royer et ux.*, 194 Or 355, 368, 241 P2d 142, 242 P2d 200. We quote from the opinion in that case:

"An infant, being non sui juris, is incapable of fixing or changing his domicile, unless he has been emancipated by his parents; and even then, according to some authorities, he is unable to make such change. During minority, the domicile of an infant continues to be the same as that of the person from whom he took his domicile of origin and changes only with the domicile of that person. 28 CJS, Domicile, 21 § 12b (1). In 28 CJS, Domicile, 21, § 12b (2), we read:

" 'The domicile of a legitimate child, during minority and until emancipation, ordinarily follows that of the father, while the latter is alive, regardless of the consent or desire of the parties, and even though the child is not living with him.' * * *".

In this state jurisdiction to appoint guardians for minors is vested by ORS 126.105 in the county courts and circuit courts having original and exclusive probate jurisdiction. The statutes authorizing the appointment of guardians provide in part as follows:

"When it appears to the satisfaction of the court from a duly verified petition praying for the appointment of a guardian that a person resident of the county in which the petition is filed is a minor, spendthrift or is incompetent and needs the care of a guardian, or that such person has property in the county needing the care and attention of a guardian, or that such person is a nonresident of the state and has property in the county needing

the care and attention of a guardian, the court shall make an order setting a time for the hearing of such petition and directing the issuance of a citation * * *." ORS 126.120

"If, upon the hearing, the court is satisfied, that the allegations of the petition are sufficient and true, and that no other court in this state has acquired jurisdiction of the matter, it shall make an order appointing a guardian; * * * ORS 126.235.

The petition filed by Mrs. Lasley asking for her appointment as guardian does not allege that Doris was a resident of Oregon but instead alleged that Doris "is at the present time residing in the City of Portland, Multnomah County, Oregon, in the home of your petitioner." The petition further alleged that the "natural parents of said Doris Irene Fox, to-wit: Bert Fox and Doris Eilene Fox, are nonresidents of the State of Oregon, and reside in the County of Del Norte in the State of California." The findings of the court were in the same language as the petition.

■■ It has been frequently stated that the county and circuit courts of this state when acting in probate matters are courts of general jurisdiction. See *Anderson, Adm. v. Clough et al.*, 191 Or 292, 230 P2d 204, and cases cited therein. It is now settled, however, that the particular powers exercised by these courts when sitting in probate are only such as pertained to probate courts at the time of the adoption of the constitution or have been conferred by statute. See *In Re Stroman's Estate*, 178 Or 100, 165 P2d 576 and *Arnold et al. v. Arnold*, 193 Or 490, 237 P2d 963, 239 P2d 595. Some of the language used in the Arnold case was limited in effect by the later case of *McColloch v. U. S. National Bank*, 207 Or 508, 297 P2d 1076 but there was no intent to change the basic rule that the powers of a court

when sitting in probate are only such as pertained to probate courts at the time of the adoption of our constitution or have later been conferred by statute.

■ The provisions of ORS 126.120 quoted above require the petition to state the jurisdictional facts as a prerequisite to the appointment of a guardian and among these jurisdictional facts is the residence of the minor. Where a statute requires the petition to set forth the facts necessary to give the court jurisdiction and the petition fails to disclose such facts, it has been uniformly held that no presumption can be indulged in to uphold jurisdiction. One of the recent statements of this rule is found in *Anderson, Adm. v. Clough et al.,* supra, wherein earlier decisions of this court are cited.

■ It is equally well settled that when the lack of jurisdiction appears upon the face of the record, the orders and decrees of the probate court are void. *Anderson, Adm. v. Clough et al,* supra, *Wilson v. Hendricks,* 164 Or 486, 102 P2d 714, *Yeaton v. Barnhart,* 78 Or 249, 150 P 742, 152 P 1192, *Smith v. Whiting,* 55 Or 393, 106 P 791 and *Holmes v. O. & C. R. R. Co.,* 7 Sawyer 380, 9 F 229.

■ When jurisdiction is dependent upon domicile our statutes have generally used the words "resident" or "inhabitant" and it has been uniformly held that these words, when used in such statutes, are synonymous with "domicile." In considering a statute providing for jurisdiction in divorce suits, the court in *Zimmerman v. Zimmerman,* 175 Or 585, 591, 155 P2d 293, said:

"Notwithstanding the distinction between 'residence' and 'domicil' as the terms are used at common law, it is held that since the court lacks jurisdiction to grant a divorce unless there is a domicil

within the state, the words 'resident' or 'inhabitant' when used in statutes such as O.C.L.A. § 9-910 should be construed to mean domicil. 1 Beale on Conflict of Laws, § 10.8, p. 116; Restatement, Conflict of Laws (1934), §§ 9, e., and 110, b; Northwestern Mortgage and Security Co. v. Noel Const. Co., 71 N.D. 256, 300 N.W. 28; West v. West, 35 Hawaii 461; St. John v. St. John, 291 Ky. 363, 163 S. W. (2d) 820; Ex parte White, 228 Fed. 88; Struble v. Struble, Tex. Civ. App., 177 S. W. (2d) 279; Dicks v. Dicks, 177 Ga. 379, 170 S.E. 245. * * *"

In considering our statutes relating to jurisdiction to probate decendents' estates, ORS 115.130 and 115.140 which use the word "inhabitant," the court in *In Re Noyes' Estate*, 182 Or 1, 14, 185 P2d 555, said:

"In Holmes v. Oregon & C. R. Co., 5 Fed. 523, Judge Deady held that, as used in these sections, 'inhabitant' has a narrower and more limited significance than 'domicile'; but in Reed's Will, 48 Or. 500, 87 P. 763, 9 L.R.A. (N.S.) 1159, this court, speaking through Mr. Justice Robert S. Bean in an elaborate and learned opinion, treated a testatrix's domicile as determinative of the jurisdiction of an Oregon court to admit her will to probate. In view of that decision, which has never been departed from, and numerous adjudications elsewhere of the same tenor (see 21 Words and Phrases (Perm. ed.) 344, et seq.), we are of the opinion that the word 'inhabitant', as used in our probate code, is to be treated as the equivalent of 'domicile'. See, also, Zimmerman v. Zimmerman, 175 Or. 585, 590, 155 P. (2d) 293, and cases there cited; Mulkey v. Nash, 159 Or. 698, 82 P. (2d) 880; Popejoy v. Boynton, 112 Or. 646, 657, 229 P. 370, 230 P. 1016."

█ This court has not had occasion to construe the word "resident" as used in our statutes providing for jurisdiction in guardianship, but there are numerous cases from other jurisdictions which have construed

"resident" when used in guardianship statutes to mean "domicile." One of the earlier cases is *Allgood v. Williams*, 92 Ala 551, 8 S 722, where the court, in considering the statute authorizing the appointment of a guardian by the probate court of the county in which the minor "resides," said:

> "* * * Though the word 'residence' is often used to signify a temporary abode, it is also used to signify a fixed and permanent home. 'Residence' and 'domicile' are not in all respects convertible terms; but when 'residence' or 'resides' is employed in a statute relating to succession, grant of administration, and of guardianship, it is generally contrued to mean the legal residence, and as equivalent to 'domicile.' Jac. Dom. § 75. * * *"

The following cases also hold that "residence" is synonymous with "domicile" when used in statutes relating to guardianship: *In Re Estate of Pearl Penn Cameron*, 158 Fla 91, 28 S2d 110; *Jagger v. Rader*, 134 Kan 570, 7 P2d 114; *Sudler v. Sudler*, 121 Md 46, 88 A 26; *Matter of Thorne*, 240 NY 444, 148 NE 630; *Cribbs et al. v. Floyd et al.*, 188 SC 443, 199 SE 677. The same rule was applied in the following cases construing statutes relating to adoption: *In Re Webb's Adoption*, 65 Ariz 176, 177 P2d 222; and *Johnson v. Smith*, 94 Ind App 619, 180 NE 188.

We believe the weight of authority and better reasoning support the rule that residence means domicile when used in statutes relating to guardianship. We therefore hold consistent with the rule adopted in *Zimmerman v. Zimmerman*, supra, and in *In Re Noyes' Estate*, supra, that the word "resident" as used in ORS 126.120 is synonymous with "domicile."

■ In the case at bar the lack of jurisdiction appears upon the face of the record. The petition affirmatively alleges that Doris' parents are non-residents of

Oregon and reside in California. No facts are alleged in the petition which would invoke any exception to the general rule that the domicile of the infant is the domicile of the father. The Relinquishment for Guardianship attached to the petition could not affect a change in the domicile of the child. It has been generally held that an agreement by the parents that their child may live away from the family home does not change the domicile of the child. The rule is expressed in Restatement, Conflict of Laws 55, § 30 (c) in the following language:

"The fact that the child lives apart from the father, whether with the permission of the father or not, is immaterial. The child has no power to acquire a domicil of choice nor can the father fix the domicil of the child at any place other than that at which the father has his domicil. * * *"

In *Haney v. Knight*, 197 Md 212, 78 A2d 643, the mother of an illegitimate child domiciled in Greene county, Virginia executed an "entrustment agreement" in favor of the Greene county Board of Public Welfare relinquishing the child to the permanent care and custody of said board so that the child might be placed for adoption and authorizing it "to place her in a temporary foster home or institution until arrangements are made for adoption and then to act with full custody of the child." The child was placed by the superintendent of the Board of Public Welfare with a couple residing in Maryland. In holding that the domicile of the child was not changed by these circumstances, the court of appeals of Maryland said:

"* * * In the instant case the child is clearly domiciled in Virginia, where the natural mother has always resided, and this is not altered by the fact that custody was given to the Greene County Board, or by it to the appellants. Sudler v. Sudler,

121 Md. 46, 51, * * 88 A. 26, 49 L.R.A. N.S. 860."

In *Com. ex rel Teitelbaum v. Teitelbaum, Aplnt.,* 160 Pa Superior 286, the parents and the child were all domiciled in Pennsylvania. The custody of the child was awarded in a habeas corpus proceeding to the father. Shortly thereafter the child was taken to New Mexico by the father's brother and wife. In connection with this transfer of custody, an agreement was executed by the child's parents, the form of which was not disclosed by the record, but which apparently contemplated the adoption of the child in New Mexico by the father's brother and wife. In discussing the effect of such agreement, the court said:

"* * * The written agreement between the parties under which the child went to live in New Mexico, whatever its terms, did not affect the domicile of the child nor the subject matter of its custody. Parents of children, by agreement between them, cannot nullify an order nor oust the jurisdiction of a court in custody proceedings. 'The relationship of parent and child is a status—not a property right. Parents, whether divorced or not, have no property right in their child's custody, concerning which they may make contracts . . .' In Re: Minor Children of Rosenthal, 103 Pa. Superior Ct. 27, 157 A. 342; Com. ex. rel. Goessler v. Bernstein, 149 Pa. Superior Ct. 29, 26 A.2d 213. * * *"

See also 1 Beale, Conflict of Laws 210, § 30.1 and 8 Cornell L Q 107 and cases cited.

■ Since it appears from the petition that Doris was in fact domiciled in California, the court was not authorized to appoint a general guardian of the person of said child and we hold that the guardianship proceedings were void for lack of jurisdiction.

 The guardian relies on the Relinquishment for Guardianship but that instrument can not confer jurisdiction on the court. In accordance with the universal rule, we have frequently held that jurisdiction of the subject matter can not be conferred by consent or agreement of the parties.

In *Garner v. Garner*, 182 Or 549, 561, 189 P2d 397, we said:

"* * * Where the court is without jurisdiction of the subject matter involved in a particular case, jurisdiction cannot be conferred by consent, agreement, or other conduct of the parties. 21 C.J.S., Courts, section 85; 14 Am. Jur., Courts, section 184; Skyles v. Kincaid, 124 Or. 443, 453, 264 P. 432; State ex rel. Kahn v. Tazwell, 125 Or. 528, 543, 266 P. 238, A.L.R. 1436; Stretch v. Murphy, 166 Or. 439, 448, 112 P. (2d) 1018."

In *Skyles et al. v. Kincaid et al.*, 124 Or 443, 453, 264 P 432, the rule was thus expressed:

"It is argued that the order can be upheld as a consent decree. Consent decrees are ineffective where the court lacked jurisdiction of the subject matter; Freeman on Judgments, § 1309. Since the court could not have entered this judgment pursuant to litigation, it could not enter it pursuant to consent."

 The Relinquishment for Guardianship is also subject to the objection that an agreement by a parent to relinquish custody of his child is against public policy and void. In *Denessen et ux. v. Taylor*, 198 Or 347, 255 P2d 148, the parents of Janet Denessen were attempting to gain custody of said child from her maternal grandmother. The child's mother had executed a relinquishment in the following form:

"I hereby give up all rights and custody of my

daughter Janet Arleana Denessen to my mother Ana E. Taylor for ever.

"June 12, 1943.

[signed] Dorothy Jean Denessen"

Referring to the above instrument, we said:

"The above document has no legal efficacy 'since a child is not a chattel, subject to sale or cold-blooded bargaining.' Turner v. Hendryx, 86 Or 590, 596, 167 P 1019, 169 P 109."

Our holding in this case is consistent with the rule definitely established in this state in *Griffin v. Griffin*, 95 Or 78, 187 P 598, and subsequently followed in numerous cases that the domicile of the child is the dominate factor in determining whether the court has jurisdiction to award custody based upon the welfare of the child. In *Lorenz v. Royer et ux.*, supra, in which these cases were reviewed, this court definitely rejected the rule that mere presence of the child within this state confers jurisdiction on the court acting on behalf of the state as parens patriae to adjudicate what is for the best interests of the child. In the Lorenz case the mother brought a habeas corpus proceeding to obtain custody of her two children from her former husband. The domicile of the mother and children was in Indiana, but the children had been living with their father in Oregon for several years. In denying a petition for rehearing, the court said:

"In arriving at our ultimate conclusions in the instant case, we were persuaded by what we deemed to be the better reasoning of those authorities asserting the proposition that, unless the child is domiciled in the state, the court has no jurisdiction to inquire into what its welfare and best interests demand, except under certain exceptional circumstances as outlined by us, and that the determination of the court of domicile is entitled to full faith

and credit in the state of the forum. As we pointed out in our opinion in this case, in the prior decisions of this court involving the custody of an infant whose custody had been awarded by a court of a foreign jurisdiction, and wherein we assumed jurisdiction to pass upon the question of its welfare, it appeared that the child had become legally domiciled in and a citizen of this state. It is fundamental that each state should be permitted to determine the status of its own citizens.

"Our opinion in this case is based entirely upon a jurisdictional question. We do not believe the trial court had jurisdiction to inquire into the welfare of these children and award custody accordingly, and, of course, we have no such authority. This does not mean, however, that we are not deeply concerned about the welfare of these children. We are. If jurisdiction had existed, we are of the opinion that the ultimate conclusions of the experienced trial judge were correct, everything considered. But we are here concerned with a highly important principle of jurisdiction. It is obvious that we cannot make law to suit each individual case as it arises. There must be stability and uniformity in our decisions. Otherwise, the result would be legal chaos."

Although the Lorenz case and the earlier decisions on which it is based involved a prior adjudication by the court of another state with regard to the status of a child, we think the same principle is applicable in this case. The legal chaos apprehended in the Lorenz case would only be increased if an adjudication of a court of this state that it did not have jurisdiction to award custody of a child not domiciled in Oregon could be circumvented by the appointment of a guardian based solely on the presence of the child in this state.

The guardian attempts to rely on the rule adopted in some cases that abandonment of the child by

its parents results in a change of the domicile of the child to that of the next of kin or other person having custody of the child. Laying aside the question of whether abandonment or neglect in California vests jurisdiction in the courts of Oregon, we find no evidence of abandonment in this case. Doris was living in the home of her parents when Mrs. Lasley and Mrs. Austin went to Crescent City, in an effort to obtain custody of Doris and Helen. The evidence indicates that Mr. and Mrs. Fox were reluctant to relinquish the two girls and did so only after persuasion by Mr. Benner. Under these circumstances we believe the claim of abandonment is without merit.

We regret that we are required to decide this case upon a jurisdictional question. We are inclined to agree with the learned trial judge who had the advantage of observing the parties, that the best interests of the child would be served by leaving her in the custody of Mrs. Lasley, who, with the help of her husband, has given Doris a good home. But we are dealing with the child of a family domiciled in California and have no right in this case to permanently deprive the family of one of its members. Whether Doris should be taken from the custody of her parents is a question which should be settled by the courts of the state of her domicile. We have confidence that the California courts when the matter is called to their attention by a proper proceeding will be as deeply interested in the welfare of Doris as we are.

Our decision in this case should not be construed to impair the power of our courts to assume jurisdiction for the purpose of giving temporary protection to a minor found helpless, needy or abandoned within

the borders of this state. As pointed out in *Lorenz v. Royer, et ux.*, supra:

> "We do not wish to be understood as holding that under no circumstances may the courts of this state assume jurisdiction over the welfare of a child not domiciled here. If a minor is found within this state who is deprived of parental care, control, and oversight, or who is neglected or abandoned and in need of protection, the courts of this state will afford at least temporary relief. \* \* \*
>
> "In this state the legislature has created juvenile courts with jurisdiction to discharge the duty the state owes in the respects mentioned. Ch. 6, title 93, OCLA."

In view of our conclusion that the circuit court lacked jurisdiction, we have found it unnecessary to consider the effect of the failure to serve a citation on the parents as required by the statute.

Reversed.

ROSSMAN, J. dissents.