Argued April 17, affirmed May 20, 1974

STATE ᴇx ʀᴇʟ HIGHWAY COMMISSION, *Plaintiffs,*
*v.* CHAPARRAL RECREATION ASSOCIATION
ᴇᴛ ᴀʟ (No. 2327), *Defendants,* GYGI, *Appellant,*
McKAY ᴇᴛ ᴀʟ, *Respondents.*

522 P2d 236

*Bobby B. Bouneff,* Portland, argued the cause for appellant. On the appellant's brief was Robert N. Gygi, Portland, pro se. On the reply brief were Tyler Marshall, and Bouneff, Muller & Marshall, Portland.

*Wendell Gronso,* Burns, argued the cause and filed the brief for respondents.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

This appeal is from a denial of Robert N. Gygi's petition for participation in attorney fees awarded to

the defendants' attorneys in this condemnation proceeding. An appeal from the entire award was taken to this court and it was affirmed on May 21, 1973. *State Hwy. Comm. v. Chaparral Rec.,* 13 Or App 346, 510 P2d 352 (1973). Included therein was an award of $31,000 on account of attorney fees.

Petitioner Gygi, preceding the commencement of the condemnation proceeding, had acted as attorney for Chaparral Recreation Association and Western Recreation, Inc., which is a sister corporation with an interest in the property, and some individuals who were also interested therein. He had obtained a judgment for attorney fees in that connection ($8,380.84) which was a lien against the condemned property. When the condemnation proceeding was commenced, he was instrumental in obtaining the services of Owen M. Panner and Mr. Panner's law firm to handle that litigation. An offer of $71,000 already had been made by the State Highway Commission for the property. After commencement of his services, Mr. Panner associated with himself for the preparation and trial of the case Roy Kilpatrick, an attorney of John Day, Oregon.

In his petition Mr. Gygi alleges that at the specific instance and request of the Panner firm "petitioner rendered legal services for the defendants and the said attorneys herein, which services had a reasonable value of $14,000 * * *." He alleges that the court should determine the reasonable value of his services and "petitioner's right to participation in and to an apportionment of the attorneys fees payable by the plaintiff and by the defendants herein * * *." Attorneys Panner and Kilpatrick resisted this *quantum meruit* petition; and after a hearing on the petition, the court made its

order distributing the proceeds of the entire award in the case. The award for attorney fees, which included the $31,000 mentioned above plus additional fees made due by the retainer contract, infra, was made to Owen Panner. In a separate paragraph of this order, it was recited that the "petition of Robert N. Gygi for the right to share in the attorney's fees awarded to Owen M. Panner as above set forth is denied." This was dated July 10, 1973. On the same day the court entered a separate order which also denied the Gygi petition in almost the same words. In the preamble of the latter order the court noted that "the parties [had] stipulated that the petition be heard and decided by the court."

At the conclusion of the hearing on the petition was this colloquy:

"THE COURT: Well, I don't even know if I've got jurisdiction of this thing. I think the Court of Appeals still has jurisdiction, don't they?

"MR. PANNER: No. You do by stipulation. We agreed to submit this matter to your Honor as part of the division of the proceeds in the matter, your Honor.

"THE COURT: Well, Mr. Gygi, I don't think I can help you. I'm going to deny your petition."

■■ Petitioner now contends that the court had no jurisdiction to hear his petition, not because the principal case was in the Court of Appeals—which it was not, because the mandate from that appeal was entered on July 6, 1973—but because there was allegedly no subject matter jurisdiction in the court. He made no such objection at the time the matter was determined. Nevertheless, he points out the frequently repeated rule that the parties cannot by agreement confer jurisdiction on a court which lacks jurisdiction of the subject

matter of a proceeding. *See Wink v. Marshall,* 237 Or 589, 592, 392 P2d 768 (1964):

> "Jurisdiction cannot be conferred by the parties by consent, nor can the want of jurisdiction be remedied by waiver, or by estoppel. See *Fox v. Lasley,* 212 Or 80, 93, 318 P2d 933 (1957) * * *."

However, the statute defining the circuit court's jurisdiction in eminent domain proceedings provides that in such cases

> "* * * [t]here may be included as defendants any lessee or other person in possession *and all other persons having or claiming an interest in the property.*" (Emphasis supplied.) ORS 35.245 (2).

The contending parties, Gygi, Panner and the Panner firm had been made defendants. The Panner firm and its members were made a party apparently because it had an interest in the defendant Ritchardson's claim to the condemned property. The condemnation Act appears not to give in specific detail what the court's power is in reference to distribution of final awards but does state that

> "[t]he court may distribute all or any part of the funds deposited by a condemner to the persons entitled thereto * * * upon such terms and conditions as may appear just and reasonable." ORS 35.285 (1).

In *State Highway Com. v. Burk et al.,* 200 Or 211, 265 P2d 783 (1954), the Supreme Court went into detail regarding the court's authority to distribute to the various defendants the proceeds of a condemnation award. On p 259 the court said:

> "* * * [T]he law should not throw the parties out of court and require them to institute a separate and independent suit in equity, or to bring an action for money had and received, which would be neither

plain, speedy nor adequate, when all the parties are before the court and when timely request is made, as was done in this case, for further proceedings apportioning the award."

In *Burk* the question involved distribution among the property owners and those having liens against the property of the money paid as compensation for the property and did not appear to involve an apportionment of the attorney fees. Nevertheless, the language favors the jurisdiction the court assumed at bar. Additionally, petitioner Gygi and Mr. Panner and his law firm were "parties." Under these circumstances we hold that the court had jurisdiction to entertain and decide the petition which was before it.

The balance of petitioner's contentions on appeal relate to the correctness of the court's rulings on evidence offered and the denial of the petition. The evidence shows: On February 15, 1972 Robert N. Gygi, Chaparral Recreation Association, A. V. and Marie Ritchardson, Al and Betty L. Olsen, and Skyline Enterprises, Inc., and the individual members of the Panner law firm as "clients" entered into a written agreement employing the Panner law firm "by Owen M. Panner" as "attorneys" in this condemnation proceeding. The substance of the fee agreement was:

> "Client agrees to pay Attorneys an attorney's fee equal to 33 1/3% of the amount of the total amount recovered by the Client including any Attorney's fee awarded, over and above the sum of $71,000.00 * * *."

This writing was introduced at the commencement of the hearing on the petition. Copies of letters between Mr. Panner and Mr. Gygi were also introduced in which

were the following excerpts which have a bearing on the fact issue:

On June 5, 1972 a letter from Panner to Gygi stated:

"* * * I think it is important that you be present and be available to be a witness at the time of the trial of the condemnation case."

On June 28, 1972 a letter from Gygi to Panner stated:

"* * * Since you are representing the parties, I assume that other than in my own behalf as a lien creditor, I have no right to contest * * *.

"* * * * *

"* * * [U]nless Western Recreation nets at least $135,000 after attorneys fees and costs to you and Mr Kirkpatrick [sic], not only will your clients not come out whole but there will be nothing left to deal with the unsecured creditors."

The case was tried on July 12-13, 1972 and the judgment then announced was $166,307 compensation and $31,769 attorney fees.

On July 17, 1972 a letter from Gygi to Panner stated:

"Under the retainer agreement forms which you sent out, you take one-third of the total recovery including any attorneys fees awarded over and above $71,000 * * *."

On July 19, 1972 a letter from Gygi to Panner outlined various entities who had been purchasers of memberships from Chaparral.

The above communications were acknowledged as having been mailed and received. Gygi also introduced a copy of a letter dated July 18, 1972, which Panner denied he had ever received but which Gygi stated he had mailed, in which Gygi discussed details of pro-

posals he was making for a division between Panner, Kilpatrick and himself of the attorney fees to be collected under the retainer agreement. One proposition was that he should receive one-third and Panner and Kilpatrick two-thirds of 85 percent of the gross fees and that the other 15 percent be disbursed in an involved way unimportant to relate. The other was that Panner and Kilpatrick would take 75 percent of the total fees and that Gygi would receive 25 percent thereof. On July 25, 1972 Panner sent a letter to Gygi (which was acknowledged) saying:

"Thanks for your letters of July 17th and July 19th.
"* * * * *."

No acknowledgment was made therein of the purportedly mailed letter of July 18. Almost ten months later, on June 2, 1973 Panner wrote to Gygi:

"I was terribly surprised to learn in our telephone conversation on May 31, 1973, that you expected to participate in the award of attorney's fees in the condemnation proceedings. There had been no indication either personally or in correspondence of that fact.

"At the time I undertook to handle this matter, I specifically advised you that I would want to retain Roy to assist me and that two attorneys would be all that we could justify on the case. You cheerfully agreed that you did not want to participate and that you knew very little about condemnation.

"While you did assist with many details, the assistance came because of your interest in the litigation otherwise. You represented many of the defendants and had a personal judgment for past attorney's fees. It was my understanding that your assistance was handled on this basis.
"* * * * *

"Your letter makes reference to a letter written to me on July 18, 1972. I find letters dated July 17 and July 19 to which I responded, but no letter of July 18, 1972.

"* * * * * *"

■ During the hearing on the petition, Gygi offered in evidence Exhibits 5 and 6 which were correspondence and other papers indicating the scope of work he had done for various of the interested corporations and parties before the retainer agreement was signed. At one point in the hearing when these were offered and refused by the court because their receipt would be in violation of the statute of frauds (ORS 41.740), petitioner asked to have them received under an offer of proof. As the offer of proof was made, Mr. Panner stated that he was not going to contest the number of hours Mr. Gygi had spent prior to the agreement and that, if Mr. Gygi was going to make an offer of proof of things that occurred prior to that time, he would like to have his statement in the record—to shorten it up—that he would not contradict it. In response to this Mr. Gygi stated that prior to February 15 he had spent 50 hours directly related to the condemnation proceeding and the preservation of the land. He also testified that he had spent 60 hours on condemnation matters after February 15. Later in the hearing Exhibits 5 and 6 were offered and refused by the court. We think that Mr. Gygi was entitled to present evidence, regardless of the statute of frauds and the retainer agreement, in support of his contention that he was entitled to $14,000 under his theory of implied contract or *quantum meruit.* That statute states:

"* * * [T]his section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as

defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic * * *." ORS 41.740.

ORS 42.220 states:

"In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown * * *."

Exhibits 5 and 6 were not made a part of the record and we do not know what was in each of the writings therein. But it is obvious from the detailed objections made by Panner to them that they were simply further evidence offered by petitioner concerning the 50 hours and 60 hours he claimed to have spent in connection with the condemnation case and protection of the land, mostly if not all of Exhibit 5 before the retainer agreement was entered into on February 15, 1972, and Exhibit 6 mostly after that date. It appears from the objections and rulings made that they were not communications between Panner and Gygi. Further, Exhibit 10 in the record is a running account of things that were done, much by Gygi as attorney, prior to and after February 15, 1972. We cannot tell, without a record (which it was Gygi's place to provide), whether there was error in excluding Exhibits 5 and 6, but if so, it was harmless because the court did hear evidence of the time Mr. Gygi said he spent on the matter. We are considering in this appeal the petitioner's claim respecting the time and work he expended on the matter prior to February 15, 1972 and thereafter.

■ The court sustained Panner's objection to Gygi's question to defendant Al Olsen, who had been called as a witness, as to whether Olsen had discussed with Gygi at the time of signing the retainer contract "who was going to do the work on the proceedings?" The

objection was based on the parol evidence rule and that Panner was not bound by Olsen's discussions with Gygi. We think the ruling was correct. In *Carolina Casualty v. Oregon Auto.*, 242 Or 407, 413, 408 P2d 198 (1965), the court said:

> "The parol evidence rule, ORS 41.740, prevents the parties to an integrated written contract from varying or contradicting the terms of the contract *when litigating between themselves* concerning their rights thereunder * * *." (Emphasis supplied.)

Panner and Gygi definitely were "parties to an integrated written contract * * * litigating between themselves concerning their rights * * *" under the retainer contract. The question Gygi asked Olsen was directly related to the contract, for it was posed as of the time Gygi took the contract to Olsen for the latter's signature. We do not consider *Carson Admx. v. Mc-Mahan Admr.*, 215 Or 38, 332 P2d 84, 73 ALR2d 981 (1958), urged by petitioner, to be in point because the parties here have a specific contract, and in *Carson* it was held there was none.

Regardless of the additional evidence which we are considering, we conclude that petitioner's claim has not been sustained. The retainer agreement itself was signed by Mr. Gygi as a client only. The court asked Mr. Gygi during the hearing:

> "THE COURT: Well, if you were going to share in the fee, why doesn't this say so then?

> "MR. GYGI: Because I didn't think it was necessary at that time to — I didn't know how much participation I would have, so I knew of no way to make an appropriate division and I didn't know what the custom was."

This is an unimpressive answer, coming from an experienced attorney.

■ If Mr. Gygi's imprecisely stated theory is that he had an unwritten agreement on the side with Mr. Panner for sharing in the fee before or contemporaneous with the February 15, 1972 written agreement, we hold that such claim fails because the written agreement cannot thus be varied.

If Mr. Gygi's theory is that an implied agreement for sharing with Mr. Panner arose after execution of the February 15, 1972 agreement, we think the evidence does not support it. The excerpts from petitioner's letters quoted above dated June 28, 1972 and July 17, 1972 are inconsistent with the claim that he makes here. Left unexplained is the copy of the letter of July 18, 1972 which Mr. Panner emphatically declares was never received by him. Why would petitioner propose a sharing of fees, and then not broach the subject again for ten months, particularly when Mr. Panner had acknowledged the letters of July 17 and 19, but ignored the one of the 18th which proposed the sharing? The copies of letters from Panner to Gygi, written at the times the events were transpiring, are consistent with Panner's contentions. We conclude, after considering all of the evidence, that petitioner failed in his burden of establishing an implied contract to share in the attorney fees.

Affirmed.