## IN THE OREGON TAX COURT

ESTATE OF DONALD D. FREEMAN
Donna Caughran Little, Personal Representative
*v.*
DEPARTMENT OF REVENUE
(TC 2784)

Harold S. Harding, Corvallis, represented plaintiff.

Ted E. Barbara, Senior Assistant Attorney General, Department of Justice, Salem, represented defendant.

Order granting plaintiff Partial Summary Judgment issued March 9, 1989.

**CARL N. BYERS, Judge.**

This matter comes before the court on cross-motions for partial summary judgment. The parties have stipulated to the following facts:

Donald Freeman (hereinafter referred to as "decedent") resided in Alaska from 1950 until 1979. He owned

property and was engaged in a contracting business while residing in Alaska. Commencing in 1955, decedent suffered from diabetes mellitus and, in 1976, he suffered a stroke. By 1979, the combination of the two health problems left him "unable to provide for himself, disoriented as to time, place and person and unable to form the intention to change his place of abode, domicile or residence."

In November 1979, the lack of appropriate medical care resulted in a business associate transporting the decedent to California. He remained in California for evaluation and medical care until February 1980 when he was transported to Corvallis, Oregon, where his daughter lived. In Corvallis, he was placed in a nursing home where he remained until he died. In June 1980, his daughter petitioned to be appointed his guardian and conservator, which appointment was made July 7, 1980. In August 1980, the daughter petitioned the court in Alaska to be appointed the guardian and conservator of her father, which appointment was made on January 8, 1981. The decedent's health continued to deteriorate and he died December 25, 1982, in Corvallis, Oregon. Defendant concluded that the decedent was domiciled in Oregon and assessed income and inheritance taxes from which plaintiff appeals.

By agreement of counsel, the narrow issue presented by the motions for partial summary judgment is whether a guardian can change the domicile of an incompetent adult ward. These motions do not require the court to decide whether the guardian did change the ward's domicile, but only whether the guardian could change the domicile.[1] To answer this question requires an examination of the Oregon statutes in effect at that time and the inherent powers of guardians.

During the relevant time periods involved, ORS 126.137 provided:

"(1) A guardian of an incapacitated person has the same powers, rights and duties respecting his ward that a parent has respecting his unemancipated minor child except that a guardian is not liable to third persons for acts of the ward solely by reason of the parental relationship. In particular,

---

[1] It is also important to note that this issue does not require the court to decide whether a court could order a change or authorize a change of domicile.

and without qualifying the foregoing, a guardian, except as modified by order of the court:

"(a)  May to the extent that it is consistent with the terms of the court order relating to detention or commitment of the ward, have custody of the person of his ward and establish the ward's place of abode within or without this state."

Since the statute equates the powers of a guardian of an incapacitated person with the powers of a parent toward its unemancipated minor child, the first question that must be asked is whether a parent has the power to choose or change the domicile of its child? The answer is: not directly. It is not the parent but the law which chooses a child's domicile. The parent chooses only its own domicile. The law imposes the parent's domicile on the child. As a general rule, neither the child nor the parent can choose a different domicile for the child. *Fox, et ux v. Lasley,* 212 Or 80, 318 P2d 933 (1957).[2]

The statute also specifies that the guardian has the power to establish the ward's place of "abode." However, the power to establish an abode is not the power to establish a domicile. *Ramsey v. Dept. of Rev.,* 7 OTR 478 (1978).

Defendant argues that, by analogy, the rule applicable to a parent and child should also be applied to a guardian and ward. Defendant cites as authority Restatement (Second) of Conflict of Laws § 22, comment h, at 92 (1971), for the proposition that:

"The ward does not take his guardian's domicile by operation of law. If the ward lives with a guardian in the state of appointment, he takes the domicile of the guardian. If he does not live with the guardian, he does not take the latter's domicile."

Section 22 purports to restate the law with regard to guardianships for minor children. Defendant appears to recognize that whether an adult ward resides with the guardian may not be a valid basis for distinction. Defendent, nevertheless, argues that on the basis of the statute and by analogy the ward's domicile should be that of the guardian's.

---

[2] This case was overruled on other grounds in *Hawkins v. Hawkins,* 264 Or 221, 504 P2d 709 (1972).

The rationale for imposing the parent's domicile on its child is the need to preserve family unity as well as lack of capacity in the child. The relationship between a guardian and an adult ward is not one that requires a unity of domicile. This is particularly true where the ward has established a domicile of choice prior to becoming incompetent. In considering this area, it is helpful to look at the basic reasons underlying the concept of domicile. Those reasons revolve around the law pertaining to the person.

"The idea of the personal law is based on the conception of man as a social being, so that those transactions of his daily life which affect him most closely in a personal sense, such as marriage, divorce, legitimacy, many kinds of capacity, and succession, may be governed universally by that system of law deemed most suitable and adequate for the purpose. In accepting domicile as this personal law, however, the English courts have regarded man as more than a social being: true to the common law tradition of individualism, they have regarded him as an individual, entitled to determine for himself, through the factual elements of domicile, the specific legal system which should constitute his personal law. * * * The adoption of domicile in English law as the personal law of an individual is based on the sound reasoning that the law of the community in which a person lives and makes his home is the one most appropriate to govern his personal status and relationships as a permanent member of that community." R. H. Graveson, *The Conflict of Laws* 148 (5th ed).

As a starting point, it appears that very few jurisdictions require domicile to establish a guardianship. Rather, guardianships may be established on the basis of mere presence in the state, like asserting jurisdiction over the person who may be fishing or driving in the state. The individual's presence in the state does not automatically make that state the most appropriate jurisdiction to govern all of the individual's affairs. This case is a good example. The decedent spent some thirty years in Alaska engaged in business, buying and selling property and undoubtedly had numerous other contacts with the community in which he resided. To equate establishment of a guardianship in Oregon with a change of domicile for the individual ignores the basic reasons for domicile. This would be particularly true if the ward happened to recover.

Defendant also argues that even if the change in domicile is not automatic, the guardian has the power to change the ward's domicile if the guardian so desires. However, as noted above, that power is not granted by the Oregon statute. If not by statute, does the guardian have that power inherently in its relationship with the ward? The court has been unable to find Oregon case authorities directly on point. Courts in other jurisdictions are in conflict. Annotation, *Change of state or national domicile of mental incompetent,* 96 ALR 2d 1236 (1964). As the annotation points out, guardianships can be established for individuals even though they remain sufficiently competent to determine their own domicile.

> "The actual mental capacity required for selection of a domicil [sic] of choice has been held to be much less than that required generally for the management of an individual's affairs, so that ability merely to have and express a preference with respect to the location of his home has been held sufficient to enable an incompetent to select his domicile." *Id.* at 1241.

It is worth noting that this same general rule was adopted in 1987 by Oregon as ORS 126.098:

> "Guardianship for an incapacitated person shall be used only as is necessary to promote and protect the well-being of the person, shall be designed to encourage the development of maximum self-reliance and independence of the person and shall be ordered only to the extent necessitated by the person's actual mental and physical limitations. *An incapacitated person for whom a guardian has been appointed is not presumed to be incompetent and retains all legal and civil rights except those which have been expressly limited by order or have been specifically granted to the guardian by the court.*" (Emphasis added.)

In view of the rationale underlying the concept of domicile and the limited scope of a guardianship, it is the court's conclusion that change of an adult ward's domicile by a guardian in Oregon must be accomplished either directly by court order or under a court order which expressly authorizes the guardian to change the domicile. This rule is consistent with the underlying rationale for the concept of domicile. It is also consistent with a decision based on all relevant considerations rather than one dictated by where a caring relative or nursing facility may be located. The court believes that this is

the better rule to follow. *See Hayward v. Hayward,* 65 Ind App 440, 115 NE 966, 116 NE 746 (1917). This rule is also consistent with the Restatement (Second) of Conflicts of Laws, § 23 (1971), which indicates that in the absence of a court order expressly authorizing a change, the primary consideration is whether a change of domicile is in the best interest of the ward.

■ Based on the above finding, it is apparent that the court must deny defendant's motion for partial summary judgment. The court can and will grant plaintiff's motion for partial summary judgment to the extent of determining that mere appointment of a guardian in Oregon did not thereby change the decedent's domicile to Oregon. Due to the nature of the court's conclusion, it may appear that the court could render a complete judgment to dispose of this case. However, by prior agreement, counsel indicated that the question submitted to the court by their motions was of a limited nature and that either one or both of the parties may wish to submit evidence with regard to any disputed facts. Now, therefore,

IT IS HEREBY ORDERED that defendant's motion for partial summary judgment be, and is, denied; and

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment be, and is, granted to the limited extent indicated.